# The Green and Coates Streets Passenger Railway Co., *versus* Moore and Rich.

1. An action on an award, although on a parol submission, is not within the Statute of Limitations.

2. A railway company accepted a charter on the condition that they should purchase at the option of the owners, the horses, &c., of an omnibus line, at a price to be assessed by appraisers. *Held*, that the valuation of the appraisers was not an award.

3. The owners having the option to sell, which they did, and the company to purchase which they did by accepting the charter, a contract was made between them.

4. An action on this contract was not on a specialty.

5. A specialty is an instrument under seal.

6. That the price was to be ascertained in a mode prescribed by the charter, did not alter the nature of the contract.

7. Where parties agree to buy and sell at a sum to be fixed by appraisement, the cause of action is on the contract, not on the appraisement.

8. The Statute of Limitations is a good plea to such appraisement.

9. The appraisers need not decide on evidence heard in the presence of the parties, they would be expected to decide on their own knowledge, but may seek information elsewhere.

10. An award is the judgment of a tribunal selected by the parties to determine matters actually in a variance between them.

11. Each count of a declaration is in law, the statement of a separate and distinct cause of action.

12. Pleas though put in to the whole of a declaration, are to be applied severally to each count.

13. An appraisement was made by two of three appraisers:—under proceedings in equity to restrain the company from exercising their franchise before paying the appraisement, the court ordered the company (amongst other things) forthwith to enter an amicable action at law to try the legal and binding effect of the finding. *Held*, this was not an issue of fact sent by a chancellor to a jury to inform his conscience, but a remission of the plaintiffs to a court of law, to decide contested facts and also to establish the legal and binding effect of the finding in *all* respects.

14. In the trial at law the defendants pleaded the Statute of Limitations, which was decided in their favor, on the ground that the finding was not an award but an appraisement casting the right of action on the assumpsit arising from the purchase of the horses, &c. *Held*, that this was a judgment on the effect of the appraisement and *final* in the action.

16. On a bill in equity to enforce the payment of the appraisement, it was *held* that the plaintiffs were concluded by the judgment of the law court.

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

January 12th 1870.     Before THOMPSON, C. J., READ and SHARSWOOD, JJ.     AGNEW, J., at Nisi Prius.

Certificate from Nisi Prius: No. 413, to January Term 1867.

This was an action of debt in which a summons issued, February 27th 1867, at the suit of Daniel T. Moore and Burrows P. Rich, against The Green and Coates Streets Passenger Railway Company. The declaration contained three counts—

1. That the plaintiffs owned the horses, coaches and other stock of an omnibus line on Green and Coates streets, Philadelphia, and the defendants were created a corporation to construct a railroad along Green and Coates streets, with the privilege to use those streets "after the purchase at the option of the owners, of the stock * * * used thereupon, at a price to be assessed by three persons chosen pursuant to the charter of the defendants." The plaintiffs averred "that being the owners of the stock as aforesaid, and exercising the option granted to them by the charter of said defendants, of which they had notice, persons were chosen conformably to the directions of the Act of April 21st 1858 to assess the price thereof, and that said persons, on the 23d day of November 1858, did appraise the same at the sum of $24,797.20, notice whereof was had by said defendants; and the said plaintiffs say that said defendants did thereafter use the streets as aforesaid, and thereby became liable to pay to the said plaintiffs said price assessed as aforesaid for the said stock." Wherefore an action accrued to said plaintiffs to recover from the defendants the sum of $24,797.20, with interest, &c.

2. That the defendants accepted a certain franchise to carry passengers for hire on and along Green and Coates streets, with the condition precedent that, before commencing to use the said streets, they should purchase, at the option of the owners, the stock of horses, &c., at a price to be assessed by one disinterested person chosen by the owners, one by the defendants, and one by the two thus chosen, who together should be disinterested persons, and should appraise such stock. The plaintiffs averred that the defendants commenced their road on the 5th day of September 1858, and at said time there were used upon said streets by the plaintiffs as owners, ninety-two horses, &c.; and that the three disinterested persons did appraise said stock at the value of $24,797.20, of which defendants had notice. The plaintiffs averred that the value assessed as aforesaid was final and binding on plaintiffs and defendants; wherefore an action accrued to plaintiffs to recover from the defendants the sum of $24,797.20, with interest.

3. That before the entering of the decree hereinafter mentioned, the defendants became a corporation as above mentioned, and were required, before commencing the construction of their road, to purchase, at the option of the plaintiffs, the stock of their omnibus line at a price to be ascertained by appraisement as above

mentioned. The plaintiffs gave notice to the defendants of their option that the defendants should purchase the same before commencing to use said streets; the defendants commenced to use said streets before the purchase as aforesaid, whereby the said statute was disobeyed, &c., and the plaintiffs to secure obedience thereto exhibited their bill in the Court of Common Pleas, Philadelphia, against the said defendants, who filed an answer thereto; that the stock was appraised at $24,797.20, and the appraisement reduced to writing. The plaintiffs afterwards brought a supplemental bill, the defendants filed an answer, and a decree was entered as follows:—"And now, May 5th 1859, it appearing to the court from the bills and answers, and it being admitted by the answer filed that the defendants are liable to pay for the stock, &c., at such valuation and appraisement as shall be made by virtue of the Act of Assembly; and it also appearing to the court that such appraisement or valuation has been filed and made part of the supplemental bill, the court did order that the appraisement or valuation as above of $24,797.20 be held as valid, binding and conclusive on the parties hereto." Wherefore an action accrued to the plaintiffs to receive from the defendants the amount of said decree, with interest from the date that the same was entered, &c.

The defendants pleaded "*nil debent,* payment, &c.," and the Statute of Limitations.

The plaintiffs replied to the 1st and 2d pleas and demurred to the 3d.

The case was tried, December 21st 1868, before Mr. Justice Agnew.

On the trial the following matters appeared:—

On the 15th of September 1858, the plaintiffs filed a bill in the Court of Common Pleas, setting forth that the defendants were proceeding to construct their road without having the stock of the plaintiffs appraised, &c. The prayer of the bill was to restrain the defendants from taking any steps to construct their railway before having the stock appraised and purchasing it, &c.

On the 1st September 1858 the defendants notified the plaintiffs that they were ready to purchase the stock and appoint an appraiser.

On the 23d of October 1858 the Court of Common Pleas awarded an injunction restraining the defendants from proceeding to take up the streets, lay the rails, &c., until the further order of the court: Provided, however, that the defendants have liberty so far to complete the said road on Green street down as far as Third street, so as to render the same passable, and of no inconvenience to travelling over the same street; but no other or further work to be done by them on either of the said streets.

John J. Kersey was appointed appraiser on the part of the

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

plaintiffs, John Jacobs on the part of the defendants; Abel Lukens was selected by the other appraisers as the third. All the appraisers met and consulted together. Kersey and Lukens, on the 23d of November 1858, made an appraisement in writing, valuing the stock at $24,797.20. John Jacobs appraised the property at $11,674.80. On the 6th of January 1859, the plaintiff filed, in their equity suit, a supplemental bill, setting forth the appraisement of Kersey and Lukens; that the defendants refused to purchase the stock, &c., and pay the appraised value, &c. They therefore prayed for such further relief as the circumstances might require, &c.

The defendants answered that the appraisers had not agreed on any appraisement; that the appraisement of two only was of no validity; that the appraisers did not value the stock at its cash or market value, but added a supposed value of what it would be worth if there had been no railway on Green and Coates streets.

The defendants demurred to the bill because the plaintiffs had an adequate remedy at law.

On the 5th of March the court decreed "that the appraisement of $24,797.20 be held as valid, binding and conclusive on the parties hereto, and that the demurrer to the complainants' supplemental bill, as to so much thereof as prays a decree to enforce payment of said amount by respondent, be sustained."

On the 24th of March 1859, an Act of Assembly was passed authorizing the District Court to appoint three appraisers, where appraisers theretofore appointed had failed to agree; and declaring that the decision of a majority of such appraisers when approved by the District Court should be final, and that after the appointment of appraisers by the District Court, any court which had granted an injunction against a passenger railway company, in consequence of appraisers failing to agree, might dissolve the injunction.

The District Court, on the 11th of April, appointed three appraisers.

On the 16th of April, the counsel with the company moved that the injunction theretofore granted be dissolved.

The appraisers of the District Court reported, on the 9th of May, that they had appraised the stock at $12,079. On the 13th of May, "on motion of the counsel for the company, the court granted a rule to show cause why the same should not be approved."

"On motion of W. W. Juvenal, Esq., the court grant leave to defendants to file exceptions to the award of appraisers filed. Time to expire May 28th 1859." It did not appear that any further proceedings were had in the District Court.

On the 23d of May the Court of Common Pleas decreed: "That the special injunction heretofore granted be dissolved upon

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

the following terms; viz. : That the defendants do pay to the plaintiffs the sum of $24,797.20, the amount of the award, without prejudice to the right of the defendants to contest the same, as hereinafter stated, upon the complainants giving to defendants satisfactory security upon real estate in this county, to be approved by this court, to refund to defendants so much of said sum of $24,797.20, as may be finally determined, by due course of law, not to be owing to the complainants, by virtue of said award. And in case the said complainants shall not give such satisfactory security as aforesaid within ten days from the date hereof, then the defendants shall be at liberty to pay the said sum of $24,797.20 into this court, subject to the future order thereof; and upon payment in either case as aforesaid, the complainants shall at the same time deliver to the defendants the omnibus stock, &c., included in said award.

" And it is further ordered, that an amicable action be entered forthwith by and between the plaintiffs and defendants, in the Supreme Court for the Eastern District of Pennsylvania, or District Court, in such way that the legal and binding effect of said award shall be the main question in the case for the decision of the said Supreme Court, and that the final decision of said court shall determine the rights of the respective parties to the said sum of $24,797.20, with the interest thereon, paid as aforesaid.

"And it is further ordered, that the complainants shall be at liberty to contest, in any way which they may be advised to adopt, the award filed in the District Court of Philadelphia, in the sum of $12,079, without any prejudice to their rights under the charter of incorporation of the company defendants, if such they have, independently of said awards or either of them : and in case said last-mentioned award should be finally confirmed, and it should be adjudicated in due course of law, that the same is binding and conclusive upon said parties; then and in such case the complainants shall not be bound to refund, and the defendants shall not be entitled to receive from and out of said sum of $24,797.20, and the interest thereon, so much thereof as may be equivalent to the amount of said award filed in the District Court aforesaid, and interest thereupon, as approved and confirmed."

On the 26th of May the parties agreed to dissolve the injunction on the terms fixed in the decree, with the following modifications, instead of the payment of the money :—

"1. The defendants to pay absolutely to William W. Juvenal, Esq., attorney for plaintiffs, $15,000.

"2. To pay absolutely to him hereafter the increase, if any, made on award in District Court, as soon as approved, beyond the above $15,000."

The $15,000 were paid according to the agreement.

On the 6th of June 1866, the plaintiffs moved for a final in-

junction which was refused, and a decree was made in accordance with that of May 23d 1859, as modified by the agreement of May 26th.

From this decree the complainants appealed to the Supreme Court; the decree was there affirmed; the opinion, as follows, being delivered by

AGNEW, J.—In this case each party had secured an award to suit him, the plaintiffs for $24,797.20, and the defendants for $12,079. The court below decreed, on the 23d of May 1859, to dissolve the preliminary injunction in such a manner as to secure the payment of the larger award to the plaintiffs conditionally, and the delivery of the property of the plaintiffs' omnibus line to the defendants absolutely.

The condition was that the plaintiffs should refund so much of the larger award as should be found not to be recoverable. The decree then provided for an amicable action to be instituted between the parties in the Supreme or District Court, in which the legality of the larger award should be tested, and also enabled the plaintiffs to contest the legality of the lesser award. The effect of this was to enable the defendants to receive the stock of the omnibus line, and dispose of it without the loss which delay would cause, and to have the use of the streets for their railway; while it gave to the plaintiffs the highest sum at which the omnibus line stock was appraised, subject to refund so much as the result of the contest upon the awards would show he was not entitled to receive. There was nothing unfair in this, but it did not suit the parties, as the payment of so much money by one side, and giving so much security to refund by the other, was inconvenient. Hence, they agreed to modify the decree so that the defendants should pay $15,000 absolutely, being an advance of $2921 on the lower award, and deposit their own mortgage-bonds for any further sum to be received. The remainder of the decree stood as before, and all that was necessary on the part of the plaintiff, if he claimed more, was to proceed under the decree. This modification was made the 26th of May 1859. The $15,000 were paid, and then the plaintiff permitted the matter to rest until June 1866, a period of seven years. After pocketing the $15,000, and taking from the defendants the power to contest the difference of $2921, the plaintiff now seeks to set aside the whole decree, after seven years' acquiescence, and to open the whole case to litigation. This is unconscionable, and we cannot permit him to do so. He was never prevented from proceeding, in the mode pointed out by the decree, to recover any sum he was entitled to receive above the $15,000 already paid. The decree of the 7th of June 1866, as we understand it (a copy not being furnished in the paper-book), simply refuses a final injunction, and modifies the decree of 23d May 1859, to conform it to the agree-

ment of counsel of the 26th May 1859. This would leave the door still open to proceed by amicable action, under the decree, to test the validity of the larger award, and thereby receive the remainder of the sum awarded, if it should be sustained. It is not our purpose, as it certainly is not our duty, now to decide the question of the validity of the award, or point out to the plaintiff the course he should pursue to secure its payment. But we hold that after the plaintiff has received $15,000 absolutely, and delayed for seven years to take any step upon the former decree, it would now be inequitable to set it all aside.

> Decree of the Common Pleas affirmed at the costs of the appellant.

The plaintiffs, having given in evidence the charter of the defendants, the record of the proceedings in equity as above stated, and the appraisement of Kersey and Lukens, examined Kersey and Lukens as to the manner of taking the appraisement, and the principles upon which they fixed the value of the stock. After plaintiffs had closed, the defendants moved for a nonsuit on the ground that an appraisement by *two* only of the appraisers was not valid. The court refused the motion.

The defendants then examined Jacobs, the third appraiser, who also testified as to the manner of the appraisement. They gave evidence tending to show that the other appraisers fixed their valuation of the stock with reference to the loss of plaintiffs' business in their omnibus line. Also the proceedings in the District Court, &c., and that they had paid the plaintiffs the $15,000.

The plaintiffs submitted these points :—

1. The appraisement sued on was valid, and the defendants are liable for the amount thereof, allowing them a credit of $15,000.

2. As a valid appraisement had been made under the charter of defendants, the proceedings in the District Court were beyond their jurisdiction, and the same do not vitiate the appraisement sued on.

3. As the Common Pleas decreed that the plaintiffs should be at liberty to contest the award filed in the District Court, *without any prejudice to their rights ;* the appearance by their counsel is not a submission to the said award.

4. The award filed in the District Court is not an award within the meaning of the Act of 1859, as the same " was not approved by the judges of the said court."

The defendants' points were :—

1. If the jury believe from the evidence that the appraisement made by Lukens and Kersey was made more than six years before the bringing of this suit, the verdict must be for the defendants.

2. Under the evidence in the cause, the plaintiffs cannot recover upon the 3d count of their declaration, and on this count the verdict should be for defendants.

3. The paper called an appraisement, signed by Lukens and Kersey in this case, is not such a paper as the plaintiffs can recover on, because it was not signed or acquiesced in by Jacobs, one of the appraisers.

4. The appraisement by the District Court appraisers was binding upon the parties, and superseded the appointment of appraisers by the parties.

5. If the jury find from the evidence that Lukens and Kersey, or either of them, considered any question of "good-will," or any question but that of the fair cash value of the articles themselves, in valuing the articles which they set out in the paper signed by them, then that paper signed by Lukens and Kersey is not to be considered by the jury, but altogether to be discarded by them in arriving at their verdict.

The court charged:—

"The appraisement made by Kersey and Lukens was a good and binding assessment under the Act of Assembly, unless these appraisers made a plain mistake in the valuation of the stock by adding to the value of the specific articles a sum for compensation for the loss of the use of the omnibus line on Green and Coates streets; or any other matter foreign to the subject of appraisement presented by the law. But if the appraisers appraised the articles of stock specifically at what they believed was their fair market cash value, the appraisement is binding and cannot be set aside. The mere fact that the appraisers had vague impressions of a loss being suffered by the plaintiffs, will not affect their valuation if in point of fact they valued the property at what they believed to be the true and actual cash or market value of the stock. It is only in the case of a plain and clear mistake in making the appraisement that it can be set aside. The jury will decide, therefore, whether any such mistake was made by Kersey and Lukens by adding to the true and actual value of the stock a valuation of the good-will (as it is termed) of the streets, that is, for the loss of the use of the streets for their omnibus line, it is not the province of the jury to determine the value of the stock for the purpose of considering the error of valuation, if any, but to determine whether a plain mistake has been made by adding to the true value of the stock something which the act does not authorize to be added. If satisfied that such a mistake was made by these appraisers, the verdict must be for the defendants; in that event the award fails. If not so satisfied on the evidence the verdict must be for the plaintiffs for the unpaid balance of this appraisement, with interest."

The court answered the plaintiffs' points as follows:—

[Green & Coates Streets Passenger Railway Co. v. Moore.]

1. This is correct unless there was such a plain mistake as has been stated in the charge.

2. Affirmed.

3. Affirmed in view of the state of the record in the District Court, there being no final approval of the award in that court when the final decree and modification in the Common Pleas took place, it became the duty of the petitioners in the District Court to prosecute their appraisement to a final confirmation in order to meet the terms of the decree in the Common Pleas.

4. Affirmed in view of the proceedings and decree in the Common Pleas.

Defendants' points :—

1. A demurrer being pending as to the plea of the Statute of Limitations, this point is declined at the present time, and the question of the effect of the statute is reserved for decision upon the demurrer, and I reserve also the question upon the record of the proceedings in the Court of Common Pleas and the District Court of how far the question of the Statute of Limitations is affected by these proceedings.

2. Affirmed.   The decree of the 23d of May 1859, opened the preceding decree of the 5th March 1859, and left the award itself as the subject of the controversy.

3. Denied.

4. Refused on the ground that the appraisement in the District Court was not finally approved, and in view of the operation of the proceedings of the Common Pleas upon both awards.

5. The mere *consideration* of the question of " good-will," or any question but the actual cash value of the articles themselves set out in the paper, will not vitiate the award or appraisement unless the appraisers added to the actual cash value of the articles a value in money for the " good-will," or for any other matter which does not belong to the cash value of the articles.   It is the actual incorporation with the value of the articles, of the value of some independent or foreign matter not authorized to be appraised, which constitutes the plain mistake referred to as vitiating the appraisement.

The judge further charged :—

" The jury are not to decide upon the merits of the valuation made in the District Court.   The actual value of the stock (as the jury might conclude it ought to be under the evidence) has no bearing on this issue except so far as it is a circumstance corroborating the testimony of Jacobs, tending to show that other elements did enter into the valuation beside the actual cash value of the stock in the market.   The decree of the Supreme Court referred to, left the question upon the award in suit untouched by that decree."

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

The jury found for the plaintiff $15,472.39, and for the defendants on the 3d count of the declaration.

The defendants moved for a new trial.

Upon the motion for a new trial and the demurrer, the following opinion was delivered by

AGNEW, J.—" A decision against the plaintiffs upon the Statute of Limitations would leave the main question upon the appraisement untouched on a certificate to the court in banc, and in case of a reversal would require a second trial, and a second certificate to determine finally the vital question of the cause upon the appraisement. I think it better, therefore, to decide the question upon the Statute of Limitations against the defendants, and thus let all the questions go up to the court in banc at once.

" I am not changed in opinion as to the validity of the appraisement; but as to the other questions I shall express no opinion—leaving to the defendants an open field upon the Statute of Limitations.

" I, therefore, determine the demurrer and the reserved question on the Statute of Limitations against the defendants, overrule the motion for a new trial, and direct judgment to be entered on the verdict on payment of the jury fee."

The defendants had the case certified to the court in banc; and there assigned for error the affirmance of the plaintiffs' 2d, 3d and 4th points, the denial of the defendants' 3d and 4th points, and sustaining the demurrer to the plea of the Statute of Limitations.

*G. M. Dallas* and *G. W. Biddle*, for plaintiffs in error.—The appraisement having been made by two only of three is not binding. The distinction between doing public and private acts exists not so much in the character of the power or of the act to be done under it, as in the character of the *agent* appointed to perform it: Baltimore Turnpike, 5 Binn. 484; McCready *v.* Guardians, 9 S. & R. 94; Com. *v.* Canal Comm'rs., 9 Watts 466; Johnston *v.* Bingham, 9 W. & S. 58; Allegheny *v.* Lecky, 6 S. & R. 170; Welty *v.* Zentmyer, 4 Watts 75; Okison *v.* Flickinger, 1 W. & S. 257; Ford *v.* Keen, 1 Harris 179. The requisition of the charter being to make an unprofitable purchase, must be strictly construed. The third person was not an umpire but an original appraiser. The assessment was the cause of action laid in the first two counts, and being made more than six years before the suit was commenced, was barred: Act of March 27th 1713, § 1, 1 Sm. L. 76, Purd. 655, pl. 16. The appraisement was not an award: Leeds *v.* Burrows, 12 East 1; Russ. on Arbitration 242 (63 Law Lib.); Watson on Arbitration 135 (59 Law Lib. 90, n. X.); Kelly *v.* Crawford, 5 Wall. 785. This is a mere contract of purchase, the price to be fixed by appraisement; the plea of the statute was good: De Haven *v.* Bartholomew, 7 P. F. Smith 126.

[Green & Coates Streets Passenger Railway Co. v. Moore.]

*D. W. Sellers* (with whom was *W. W. Juvenal*).—The Court of Common Pleas adjudged the appraisement binding; this had the effect of a judgment at law, and the case stands as if it had been opened to let the defendant into a defence; it would still be a judgment: Sellers *v.* Burk, 11 Wright 344; City *v.* Girard, 9 Id. 29; Fulton's Estate, 1 P. F. Smith 204. The appraisement was an award: Paradise Road, 5 Casey 20; Act of June 16th 1836, § 20, Pamph. L. 721, Purd. 55, pl. 27. The plea of the statute was to all the counts; if there was one count good against the plea the demurrer was rightly sustained: Parke *v.* Kleeber, 1 Wright 254. The statute applies only to contracts, not to debts arising by construction of law: Richards *v.* Bickley, 13 S. & R. 395; Rank *v.* Hill, 2 W. & S. 56; De Haven *v.* Bartholomew, *supra.*

The opinion of the court was delivered, January 24th 1870, by
Sharswood, J.—The Act of Assembly of March 27th 1713, "An act for Limitation of Actions," 1 Smith's Laws 76, copying the words of the statute 21 Jac. 1, c. 16, enacts that "all actions of debt grounded upon any lending or contract without specialty" shall be commenced and sued within six years next after the cause of such action or suit, and not after. It was held in Hodsden *v.* Harridge, 2 Saund. Rep. 64 b., that an action of debt on an award was not within the statute. The award indeed in that case was under seal, but as it was in pursuance of a parol submission, that circumstance was not regarded as material. By a later statute of 3 & 4 Wm. 4, c. 42, all actions of debt upon an award, where the submission is not by specialty, shall be sued within six years: Billings's Law of Awards 213. This court, however, followed the English construction of the statute in Rank *v.* Hill, 2 W. & S. 56, though it would seem with much hesitation, and simply on the ground of authority; for it is said in the opinion: " One would suppose the submission to be an engagement to abide by what the arbitrators should direct, and a promise to perform it." We have no statutory amendment of the law as they have in England. We must hold then that a debt created by award is not grounded on any contract or lending; consequently that an award upon even a parol submission is not within the act.

The question which we are now to decide is, whether the cause of action, as set forth in the 1st and 2d counts of the declaration, is a debt created by an award; or, on the other hand, is grounded on a contract without specialty. There is no material difference between the 1st and 2d counts in the statement of the cause of action. Indeed it is evident that the pleader by any variance in the mode of statement could not have avoided the question which arises. The counts are both properly drawn in strict accordance with that which the facts of the case only warranted.

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

These counts are in substance that the defendants accepted their charter conferring upon them the franchise of carrying passengers for hire on and along Green and Coates streets, with the condition precedent that before commencing to use the said streets they should purchase, at the option of the owners, the stock of horses, omnibuses, sleighs and harness, owned and used upon said streets, at a price to be assessed by three disinterested persons to be chosen in the manner prescribed in the act of incorporation, who should appraise the said stock; that the defendants accepted the charter and commenced the road September 5th 1858; that three disinterested persons were selected to assess the price, who did appraise the said stock November 23d 1858; whereupon a cause of action accrued to the plaintiffs to have and recover from the defendants the amount of the appraisement, with interest thereon. We may dismiss entirely the consideration of the 3d count; because the jury have found a verdict for the defendants on the other pleas as to that count. It is now immaterial whether the plea of the statute would have been a good answer to that. Each count in a declaration is in law the statement of a separate and distinct cause of action, and pleas, though put in generally to the whole, are to be applied severally to each count. It is true, no doubt, that if the statute was not a good plea to either the 1st or 2d count, the judgment on the whole record must, on the demurrer, be for the plaintiffs. As we have seen, however, there is no substantial difference between them.

A contract is an agreement upon consideration between two or more persons to do or not to do a particular thing. Here there undoubtedly was a contract. The plaintiffs were to exercise their option of selling their stock, which they did as the 1st count expressly and the 2d impliedly avers; otherwise it would have been bad. The defendants had of necessity a similar option of purchasing, which they did, as averred, by accepting the charter and commencing the road. Here is the *aggregatio mentium*—all the essential elements of a contract. If so, then the action must be held to be grounded on a contract without specialty. By specialty is meant an instrument under seal. That one of the terms of the contract—the price—was to be ascertained in a mode prescribed by a statute, does not alter the nature of the case. It has been held, therefore, that the Act of Limitations is a good plea in an action by a justice of the peace for his fees: Harris *v.* Christian, 10 Barr 233. There a statute fixed conclusively the price of the services rendered by the justice. The plaintiffs could never have succeeded on a bare count on the assessment, or what they term the award, without averring, as they have done, the exercise of the option by both parties—in other words, the contract. In an action on an award to go back and set out the cause of action, which was submitted to the arbi-

trators, would manifestly be improper: surplusage and immaterial, if not bad. An award is the judgment of a tribunal selected by the parties to determine matters actually in variance between them—not merely to appraise and settle the price of property contracted for under the stipulation that this term of the contract was to be so ascertained. Had the parties made the contract, and afterwards, on a dispute arising, chosen arbitrators to determine what was due upon it, that might have been an award. The case is entirely different where the parties originally agree to buy and sell at a sum to be fixed by an appraisement to be made by a third person or persons. When the original contract is established by competent and sufficient evidence, then indeed the assessment thus made by the authority of the parties, or by authority of law, as in the case of the justice of the peace, may be conclusive as to the price; but there is nothing in the transaction to conclude the parties as to anything else. They may fall back—dispute the existence of any contract at all—or prove that it was tainted with fraud or illegality. Here is the clear and palpable distinction between such an appraisement and an award, which, as the court say in Rank v. Hill, "seems to be considered rather as a judgment than as an agreement of the parties made through the authorized agency of others." The case before us was in no sense a judgment, but simply an agreement through the authorized agency of others. Such an appraisement has been held not to be an award within the stamp laws: Leeds v. Burrows, 12 East 1; Perkins v. Potts, 2 Chit. 399. In Sybray v. White, 1 M. & W. 435, a written verdict of a miners' jury, who were to determine whether the defendant was possessed of a certain shaft of a mine by the agreement of both parties, was held not to require an award stamp. The document, though in the nature of an award, and strong evidence against the defendant, was not considered as an award in fact, or conclusive in evidence as an award would have been, and the jury were looked upon rather as accredited agents than arbitrators: Russell on Arbitrators 243. So a monthly settlement between partners in a stage-coach business, made by a person named in the agreement, who was to settle what was to be paid and received monthly by each partner, was held not to be an award requiring a stamp as such: Carr v. Smith, 1 Dav. & M. 192. Nor is such an appraisement subject to the strict rules governing arbitrations and awards: Kelly v. Crawford, 5 Wall. (S. C.) 785. It would not be necessary that the appraisers should decide upon evidence heard in the presence of the parties. They could decide, and indeed would be expected to fix the value of the articles, upon their own knowledge of the subject, though doubtless they might seek information from other quarters. We think, therefore, that the Statute of Limitations was a good plea to the 1st and 2d counts of the declaration. The

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

determination of this question adversely to the plaintiffs renders unnecessary the consideration of the other assignments of error.

> Judgment reversed, and now judgment for the defendants on the demurrer.

The plaintiffs Moore and Rich afterwards, on the 5th of March 1870, filed another bill in the Court of Common Pleas against the defendants, the Railway Company.

The bill in its first nine paragraphs set out the proceedings up to the commencement of the suit in the Supreme Court.

10, averred the commencement of the suit wherein the plaintiffs "respecting the decree of this court, declared solely on the said appraisement; but the said defendants, in contempt thereof, pleaded thereto, that the cause of action had not accrued within six years—but the learned judge, who tried the issue of fact which was made on the validity of the said appraisement, confined the jury to said issue. And the case in said court so proceeded, that the said jury, on the fact, found in favor of the validity of said appraisement, and the learned judge who tried the cause found likewise on the law.

11. "It was the duty of the defendants to certify said record to the Supreme Court in such way that the legal and binding effect of said award should be the main question in the case for the decision of that court, that the final decision thereof should determine the right of the respective parties to the said sum of $24,797.20, under the decree of this court; whereas the issue presented was on the plea of the statute on which the same was exclusively decided.

12. "The defendants, by reason of their avoidance of the question which this tribunal, by its decree, gave them the liberty of presenting in an action, have acted in contempt of said decree, and that it is against equity and good conscience, that as the said defendants secured the use of the streets in their charter by reason of the relation established and created by virtue of the decrees of this court, and have obtained possession of all of the property of your orators, specified in said appraisement, by reason of your orators' reliance on the said decrees; that the judgment in their favor on the plea of the statute, should bar your orators from the recovery of the balance due them on said appraisement.

13. "As it was optional with this tribunal to award the entry of an action to determine the validity of the said appraisement, and as its validity, so far as the defendants permitted the same to be adjudged, has been affirmed in said action; it is now only equitable that your honors should decree the payment of said appraisement absolutely, as thereby only can full and adequate relief be afforded your orators."

The prayers were, that the defendants pay the sum of $9797.20,

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

with interest, or be restrained from the use of Green and Coates streets.

The defendants demurred to the bill for want of equity.

On the 9th of July 1870, the Court of Common Pleas gave judgment for the defendants on the demurrer, and dismissed the bill.

The plaintiffs appealed to the Supreme Court, and assigned the refusal of their prayers by the court below and the dismissal of their bill, for error.

This appeal (No. 89, to January T. 1871), was heard February 7th 1871, before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., being at Nisi Prius.

*D. W. Sellers,* for appellants.—The Court of Common Pleas has no power, as a court of equity, to award an issue to be tried in another court. The obligation of the defendants to pay before using the streets was imperative : Sutcliff *v.* Isaacs, 1 Parsons' R. 497 ; Cox *v.* Willetts, 9 Penna. L. Jour. 327. The defendants having used the streets before payment, a court of equity will afford relief : McGowin *v.* Remington, 2 Jones 63 ; and in a final decree will settle all the rights without aid at law : McCallum *v.* Water Co., 4 P. F. Smith 40. A majority of appraisers can make a binding appraisement : Quay *v.* Westcott, 10 Id. 163.

*G. M. Dallas* (with whom was *G. W. Biddle*), for appellees.— The present bill cannot be sustained as a bill in review of their prior bills, so that the previous decrees may be carried into full execution, because the decree of March 5th 1859 sustained a demurrer denying a decree for the payment of the money claimed, and the prayer of the present bill is for a decree for payment of that same money.

The Court of Common Pleas, in suggesting the entry of an amicable action, did so with a view of turning the parties over to a court of law for a purpose which it had already decided not to be within its equity jurisdiction, but did not intend to control the course of the proceedings at law.

The appellants, by delaying to proceed for eight years, and then by summons, though the decree was for an amicable action forthwith, and also by declaring directly upon the decree of March 5th 1859, and *not* " solely on the said appraisement," show that they did not intend to proceed under the decree of May 23d 1859, but on the contrary, proceeded in total disregard of it.

The appellants, having demurred to the appellees' plea of the Statute of Limitations, and fully argued the same, cannot, after having taken the chance of a judgment thereon in their favor, be now permitted to allege that the decision of the issue to which they thus assented, has determined nothing.

[Green & Coates Streets Passenger Railway Co. *v.* Moore.]

The opinion of the court was delivered, February 27th 1871, by Agnew, J.—The Court of Common Pleas, by the decree of March 5th 1859, sustained the demurrer to the plaintiffs' bill, so far as it prayed for a decree to enforce payment of the award of $24,797.20, on the ground that the plaintiffs had an adequate remedy at law. The effect was to dismiss this much of the bill, and to send the collection of the award into a court of law. The modified decree of May 23d 1859 did not, in its effect, change this part of the former decree. Its purpose was to enable the defendants to dissolve the injunction, and thereby obtain possession of the omnibus stock, horses, &c., and to proceed to finish their railway; and it therefore directed a conditional or qualified payment of the award of $24,797.20. But it still substantially preserved the former decree as to the mode of enforcing the award by ordering the parties to proceed in a court of law to try the question as to its legal and binding effect. The modification of the second decree by the agreement of the parties of the 26th of May 1859, in nowise altered this feature. The payment of the $15,000 absolutely to that extent established the modified decree irreversibly, while the residue of the sum awarded was made expressly subject to the terms of the decree. It is clear, therefore, that there was no more to be done in the Common Pleas on its equity side until the plaintiffs had established their award at law, or the defendants had refused to enter an amicable action according to the decree. The remedy was therefore wholly in the hands of the plaintiffs themselves, with an imperative order on the defendants to enter an action at law "*forthwith*" to try the legal and binding effect of the award. From this analysis of the proceeding in equity it is plain that the action at law was not a mere issue of fact sent by a chancellor to a jury to inform his conscience, but was a remission of the plaintiffs to a court of law to decide not only contested facts, but to establish "*the legal and binding effect of the award*" in *all* respects. This involved questions of law and fact, to wit, its character either as an award or a mere appraisement, its obligatory effect as made by *two* instead of *three* appraisers, and its validity as a fair valuation untainted by fraud. The result of the action was necessarily final. It being an action at law, tried in an independent court of competent jurisdiction, proceeding in the course of the common law, it bore its own fruits, of which one is the *finality* which attends the trial and judgment in a common-law action.

Whether the final decision in this court was right or wrong cannot now be discussed. It undoubtedly determined finally all questions contested before it. The determination against the plaintiffs on the plea of the Statute of Limitations was on the ground that the writing in question was not an award but an appraisement; casting the right of action upon the assumpsit, arising

[Green & Coates Streets Passenger Railway Co. v. Moore.]

from the purchase of the omnibus stock, &c., and not upon the instrument itself. As a mere assumpsit to pay for goods sold and delivered, the action of course fell within the statute limiting the right of recovery to six years. This was the judgment of a competent court, having possession of the cause, upon *the legal and binding effect of the writing*, which was thus restricted to a period of six years. It fell within the very terms of the decree which remitted its collection to a court of law. Then, as to the facts on which the judgment was rendered, we find a decree made finally on the 26th of May 1859, to proceed *forthwith* to try the legal and binding effect of the award (so termed in the decree), and a payment absolute of $15,000, being $2921 more than the defendants admitted to be owing. Now, nothing was done to carry out this so-called award, in pursuance of this decree, until the 27th of February 1867, a period of nearly eight years, when the plaintiffs brought their action upon the writing in the Supreme Court. This was inexcusable laches. Under these circumstances the Court of Common Pleas was met by the final judgment in the action at law, when the present bill came before it, and rightly decided that it was a bar to any further proceeding in the equity case. In view of the nature of the action and judgment in the Supreme Court, no other conclusion could be arrived at. It was not an issue which the Common Pleas could disregard, but a final determination upon the legal and binding effect of the writing.

The decree is therefore affirmed, and the costs ordered to be paid by the appellants.