## Grote, Appellant, v. Stein et ux.

Argued April 30, 1930.

Before Trexler, P. J., Keller, Linn, Gaw-thorp, Cunningham and Baldrige, JJ.

*Fleming Nevin,* for appellant.

*Edmund W. Arthur,* for appellees.

Opinion by Linn, J., July 10, 1930:

This is an appeal from an order discharging a rule to show cause why an alleged award of arbitration should not be vacated or modified. The case was heard below on petition, rule to show cause, and answer. No depositions were taken. The only facts we have, then, are those alleged and not denied in the petition and answer. The court held that the contracting parties had merely agreed that a certain piece of land should be valued by an appraiser, and that they had not submitted to arbitration any ''controversy existing between them at the time of the agreement to submit'' as those words, from section one of the Arbitration Act of April 25, 1927, P. L. 381 (5 PS Section 1) were intended to be understood. That section provides: ''A

provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.''

Plaintiff owns number 3555 Beechwood Boulevard in Pittsburgh; defendants own the adjoining property number 3551. Plaintiff's lot is wider on the boulevard front than on its rear boundary. To enable him to widen his lot at the rear sufficiently to construct a garage at that end of the lot, he desired to buy a part of defendants' adjoining lot. The parties accordingly signed an agreement whereby plaintiff agreed to buy from defendants, who agreed to sell, a certain wedge-shaped piece of ground at a price to be fixed by appraisement to be made by the Pittsburgh Real Estate Board. The board appraised the property at $1,750. Plaintiff thought that sum too high, and, contending that the appraisement was an arbitration within the arbitration act, moved to have the ''award of the arbitration on the above entitled case [vacated] modified or corrected . . . . . . .''

Have the parties submitted ''to arbitration any controversy existing between them at the time of the agreement to submit?'' The record shows that when they made their agreement there was no controversy; one had land that the other wished to buy, but he could not require the owner to sell; the owner could not require his neighbor to buy; the parties were under no obligation to each other; there was neither contract nor duty. If they differed about the price to be paid, that difference was not an existing controversy in the sense that it furnished either with rights against the

other, such, for example, as might have existed if one had the power of condemning the land of the other and proposed to exercise it.

Now what did they do? They agreed to have the property appraised by a named appraiser, and to buy and sell at that appraisement. The appraisement was made but it is not an award of arbitrators. In a similar case, it was said by SHARSWOOD, J.: "An award is the judgment of a tribunal selected by the parties to determine matters actually in variance between them—not merely to appraise and settle the price of property contracted for under the stipulation that this term of the contract was to be so ascertained. Had the parties made the contract and afterwards on a dispute arising, chosen arbitrators to determine what was due upon it, that might have been an award. The case is entirely different where the parties originally agree to buy and sell at a sum to be fixed by an appraisement to be made by a third person or persons": Green and Coates Sts. Pass. Rwy. Co. v. Moore, 64 Pa. 79, 91.

The words of their contract were "that an appraisement shall be had by the Pittsburgh Real Estate Board who shall appraise the said property taking into consideration the surroundings, character of said plot of ground and all other pertinent factors and make report thereon ......," whereupon the owners would convey to plaintiff on receipt of the appraised value. There was no controversy to submit to an informal tribunal of their own choice for settlement; all they desired was an appraisement of the land to be conveyed. "In order to constitute a submission to arbitration there must be some difference or dispute, either existing or prospective, between the parties, and they must intend that it should be determined in a quasi-judicial manner. Therein lies the distinction between an agreement for a valuation and a submission to arbitration, for in the case of a valuation there is not, as a rule, any difference or dispute between the parties, and they

intend that the valuer shall, without taking evidence or hearing argument, make his valuation according to his own skill, knowledge, and experience.'' Vol. 1, Halsbury's The Laws of England, 440. In re Carus-Wilson & Green L. R. 18 Q. B. D. 7, it appeared that in the sale of land one of the conditions was that the vendee should buy the timber on the land at a valuation, each party to appoint a valuer, the two to appoint an umpire. A valuation was made and the question was whether it was an award or an arbitration. The court of appeals held that it was an appraisement and not an arbitration. LINDLEY, L. J., said, ''In the ordinary cases of arbitration there is a dispute which is referred. The object of the valuation, on the other hand, is to avoid disputes. There is nothing in the nature of a dispute when the valuer is appointed. It is a term of the agreement for sale that the timber shall be valued and that the purchaser shall take it at the valuation. It is a mere matter of fixing the price, not of settling a dispute.'' The intention of the parties determines whether there is an arbitration: Somerset Borough v. Ott, 207 Pa. 539, 542. One of the purposes of the arbitration act was to make enforceable agreements for submitting matters in dispute to arbitration that before were held to be revocable agreements: cf. Commercial Union Assurance Company v. Hocking, 115 Pa. 407, 414; Bashford v. West Miami Land Co., 295 Pa. 560, 568; and see American Steel Company v. Ins. Co., (C. C. A. 3rd. Cir.) 187 Fed. 730, 733; Toleda S. S. Co. v. Zenith Company, 184 Fed. 391, 401; Isaac v. Donegal etc., Insurance Co., 301 Pa. 351; Arbitration under the New Pennsylvania Arbitration Stat. 74 U. Pa. L. R. 345. In Omaha v. Omaha Water Company, 218 U. S. 180 it appeared that the city had the right to buy a water works at a value to be determined by appraisers. It was contended that their appraisement was an award of arbitrators. The court said: ''The next objection is that

the appraisers heard evidence in the absence of the city and without opportunity to reply, and that this was such misconduct as to vitiate the valuation. As already hinted, this was not a board of abitrators. An arbitration implies a difference, a dispute, and involves ordinarily a hearing and all thereby implied. The right to notice of hearings, to produce evidence and cross-examine that produced is implied when the matter to be decided ·is one of dispute and difference. But when, as here, the parties had agreed that one should sell and the other buy a specific thing, and the price should be a valuation fixed by persons agreed upon, it cannot be said that there was any dispute or difference. Such an arrangement precludes or prevents difference, and is not intended to settle any which has arisen. This seems to be the distinction between an arbitration and an appraisement, though the first term is often used when the other is more appropriate;'' see cases cited p. 198: Matter of Fletcher, 237 N. Y. 440; also see Sedree v. Board of Education, 254 Ill. 438, 446; 2 R. C. L. 352, section 2, and 5 C. J. 17, section 4: West v. Coos Co., 115 Ore. 409.

Order affirmed.