## Seiler Estate

*Richard Eisenhour, Nolan F. Ziegler, Compton, Ziegler & Hepford,* for petitioners.

*Frederick H. Bolton, J. Paul Rupp, Bailey & Rupp,* for respondent.

RICHARDS, P. J. May 11, 1956.—Under date of July 24, 1953, Walter Seiler leased to G. Robert Huffman et ux., a small tract of land in Middle Paxton Township, Dauphin County, fronting 40 feet on U. S. route 22, and having a depth of 20 feet. The premises were to be used as a roadside market. The lease was for

10 years, beginning August 1, 1953, at an annual rental of $40, with the right to renew the lease on the same terms for an additional period of 10 years. The lease also contained the following provision:

"It is mutually understood and agreed that the parties of the second part shall have the option to purchase the demised premises, including all of the balance of the premises of the party of the first part of which the within demised are a part, at any time during the term of this lease, or any renewal thereof, at a price to be fixed at the time in manner as follows: the party of the first part, and in the event of his decease, his heirs, executors, administrators and assigns to select one appraiser, the parties of the second part to select one appraiser, and these two appraisers to select a third appraiser, who shall set a fair and just value of the entire premises, and the decision of these appraisers shall be final, and the sum at which the parties of the second part may purchase said premises, and the party of the first part, his heirs and assigns, or personal representative, shall thereupon give good and marketable fee simple title to the same."

Walter Seiler died on January 5, 1954. Letters testamentary on his estate were issued to Jane Shoop. On June 14, 1955, the lessees gave notice to the executrix that they were "closing the option". Each side selected one appraiser, but the two thus selected were unable to agree to the selection of the third. Thereupon, the Huffmans petitioned the court to issue a citation to the executrix, in effect asking her to show cause why the option should not be specifically enforced, and praying the court to appoint the third appraiser or have a master to make the appraisal. An answer was filed to the citation which admitted many of the essential facts. Some evidence was received and argument had.

Petitioners in their brief concede that the so called general rule as laid down in Milnes v. Gery (1807) 33 Eng. Rep. 574, is to the effect that there can be no specific enforcement of contracts providing for the determination of price by arbitrators or appraisers. They also make the point that the present case involves appraisement, not arbitration, citing Grote v. Stein, 99 Pa. Superior Ct. 556. They then contend that the old rule has been considerably relaxed particularly where it appears that the provision for determination of price by appraisers is not the essence of the contract, but only subsidiary to its main purpose, or where there has been part performance so that the parties may not easily be placed in their original situations. For this they refer to Castle Creek Water Co. v. Aspen, 146 Fed. 8.

Respondent recognizes the powers of the court under sec. 620 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §620, but contends that there are reasons why the relief prayed for should not be granted.

## Discussion

We will first observe that the contract relating to the option is not clear in some respects. For instance, it is not stated whether or not the three appraisers must *unanimously* agree to a valuation, or whether the price is determined by *averaging* the three separate valuations, or by some other method. We do not deem it to be our duty to read into the contract something which is not there. Hence, should appraisers be appointed, a dispute could still arise about the purchase price.

Another consideration is that counsel for petitioners have argued that the lessees are entitled to know the purchase price before deciding whether they will buy or not. This means that the appraisers must fix a value before the lessees decide whether or not to exercise

this option. We cannot agree to this construction. We think the proper construction is that they must first exercise their option and then have the price determined.

After consultation between the court and counsel for the parties, a method of solving the dispute was proposed as shown by the third paragraph of the stipuation of record. This proposal was:

1. The court would appoint three appraisers.

2. The average of the three separate appraisals would determine the purchase price.

3. One thousand dollars in bond or cash to be posted by the lessees to insure compliance, said sum to be credited to the purchase price upon conveyance, or forfeited as liquidated damages for noncompliance.

This offer was accepted by the executrix but rejected by petitioners. This evidences an unwillingness to unequivocally exercise the option on the part of the lessees.

Futhermore, Mr. Huffman was called as a witness to explain why he would not agree to the proposal. His response was:

"This negotiation has been going on almost a year, and I don't feel justified in going out and put out money for a $1000 bond, and I would rather have the court take the original lease, and appraisers be appointed, and they fix the price. Then I *may* buy."

His refusal to accept the proposal and his testimony manifest an intent not to be bound by the appraisement. He was unwilling to put up $1,000 cash or money for a bond, to insure his compliance with the contract, even though appraisers be appointed. Hence, the appointment of appraisers would involve useless expense, and in the event petitioners refused to buy, would leave the executrix with a lawsuit to collect damages for the breach.

In view of these considerations, the relief prayed for in the petition for a citation must be refused.

*Order*

And now, to wit, May 11, 1956, the relief prayed for in the petition for a citation presented on behalf of G. Robert Huffman et ux., is refused.