# Lindsay's Estate.

*Corporations—Contract—Good will—Agreement among stockholders to purchase stock of retiring member.*

Where there is an agreement among the stockholders of a corporation by which each one acquires a right by way of option to purchase the shares of anyone who dies or may withdraw from the business at a "fair price or book value thereof," to be ascertained by arbitrators, the value of the good will of the business is to be taken into consideration in ascertaining the price at which the shares may be purchased.

In such a case where the representative of a deceased member refuses to recognize the right of the remaining members to exercise the option provided for in the agreement, and there is a consequent delay, the remaining members after the right has been determined and the values of the shares fixed, are entitled to the dividends declared in the meantime, while the estate of the deceased stockholder is entitled to the value of the shares ascertained as if at the time of his death together with interest at six per cent from that day.

Submitted Oct. 25, 1904. Appeal, Nos. 89, 90, 91, 92 and 93, Oct. T., 1904, by Thomas McMurray et al. from decree of O. C. Allegheny Co., Jan. T., 1903, No. 220, granting specific performance in Estate of John S. Lindsay, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Petition for specific performance.

HAWKINS, P. J., found the facts to be as follows:

The purpose of this proceeding is to enforce specific performance of a contract to close out the interest of this decedent in the James C. Lindsay Hardware Company, a corporation. The facts are these:

In 1895 James C. Lindsay, long engaged in the hardware business, being desirous of taking in with him some of his old employees, organized a corporation with a capital stock of $150,000—$100 per share, in which these employees were given certain shares on credit, or partly on credit; and in connection with this organization the parties entered into an agreement by which it was provided that:

" Whereas, the said parties have agreed among themselves that, owing to the nature of the business transacted by the said

James C. Lindsay Hardware Company, it is not desirable that the said stock so owned and held by the parties hereto should go upon the market for sale and transfer, for the reason that all the present stockholders are active workers in the business of the said James C. Lindsay Hardware Company, and are giving their personal attention and time to the development of the business; and

" Whereas, by reason of the uncertainty of life and of the possibility of some one (or more) of the present stockholders, parties to this agreement, may wish to sell his interest in the said James C. Lindsay Hardware Company and retire therefrom, and to guard against the introduction as stockholders in the said James C. Lindsay Hardware Company of strangers or outsiders in the said business, whether by reason of a wish to sell the said stock or by reason of the death of any one or more of the present stockholders, now this agreement is made:

" The parties hereto, owning at present all the stock of the said company, agree among and with each other that in case any one or more of them should desire to sell his stock in the said James C. Lindsay Hardware Company and retire from said business, or in the event of the death of any one (or more) of the present stockholders, it is agreed that those of the present stockholders who remain in the said business as stockholders therein shall have the option to purchase and acquire the whole of the stock interest of such party so dying or so desiring to sell his said interest at the book value thereof, which book value shall be ascertained as follows:

" In case the parties can agree upon a price to be paid, then the parties having the right to purchase may take the interest at such price so agreed upon. But in case the representatives of the party so dying or the party desiring to retire by sale of his interest and the remaining parties of this contract cannot agree upon a fair price or book value thereof, then each of the parties shall have the right to appoint one experienced business man as arbitrators, who, if they can agree, shall fix a price, whereupon the parties to this contract remaining in the business shall have the right to purchase said interest of the said party going out at such figure if they so desire; but they shall have the option to refuse or to take the interest at that price.

" In the event that the two arbitrators so appointed cannot

agree, then they shall choose a third party as umpire, and the decision of the majority thereof shall fix a price at which the parties remaining in the business shall have the right to take or to refuse the interest at the price so determined. In case the parties remaining in the business refuse to purchase after the price is fixed by arbitrators, then the interest may be sold by the owner or his representative to the highest and best bidder.

"Any stock of a party retiring from the business, or dying, acquired by the remaining stockholders under this agreement shall be divided or assigned by the president of the board of directors at such time acting, subject to the approval of the board, to any one or more of the parties to this agreement, or to some other party not in this agreement, on the payment by such party of the amount of the purchase price thereof, which shall be divided among such parties as shall have supplied the purchase money to pay for the interest so retiring."

James C. Lindsay was the first to die; but, probably owing to the fact that the surviving owners were indebted to him for the shares which they held, no action was taken under the agreement to close out his stock, and the trustees under his will disposed of some of it at private sale, and still hold some.

John S. Lindsay, another of the stockholders, and owning 225 shares, was the next to die, and thereupon the surviving stockholders notified the administrator of the estate and guardian of his only child of their desire to purchase the said stock at a price mutually to be agreed upon, which was refused; whereupon petitioners notified said administrator and guardian of their purpose to proceed under the agreement above given; and said administrator and guardian having wholly refused to arbitrate the matter, averring that said agreement was not legally binding and of no force or effect, the petitioners filed their bill to enforce it in the common pleas court, and this bill was upon demurrer dismissed on the ground of revocation; but the Supreme Court, on appeal, said that while the decision could not be sustained on this ground, because of the absence of averment of revocation in the pleading, it could be sustained upon the ground that jurisdiction was not in the common pleas, but in the orphans' court; whereupon the present proceeding was instituted, and the same questions of revocation and restraint of alienation, and also of value, were raised. After

the issue had been framed, "counsel for all parties believing that the questions involved herein may require the aid of experts," respectfully requested and agreed that the court " might call in the aid of Samuel McKnight, an expert in the value of merchandise, and of some accountant to be selected by the court, as assessors in this case ; " and thereupon the court appointed Albert F. Sawhill, accountant, and the said Samuel McKnight, merchandise expert, who entered upon their duties, and whose reported findings as to value substantially agree. There is no dispute as to the correctness of this finding so far as it goes, but good will was not taken into consideration in it, and respondents, therefore, claimed that an additional allowance should be made on the basis of evidence adduced as a necessary element in the " fair value " of the stock. There was a radical difference of opinion among the witnesses as to the value. Mr. J. H. Willock, one of the executors of James C. Lindsay's will, and thoroughly familiar with the business, said that the good will had no value, because it could be carried on just as well in another part of the city—his idea seeming to be that the value of good will was a question of localization. Mr. McKnight, whose thorough competency in the hardware business was recognized by his selection as an expert in this case, said that good will certainly had a value, but that, although he had given the question of its value a great deal of thought and often discussed it with others, he had never been able to find any satisfactory measure. And Mr. Sawhill, the expert accountant, said that among merchants the measure of value of good will was ascertained on the basis of net earnings beyond eight per cent, and its value was, therefore, $50,000. The earnings, barring one year in which they were for special reasons exceptionally high, have averaged at nine and one-half per cent. The stock of this company has never been put on the market, but there have been several private sales—one to John S. Lindsay by the executor of James C. Lindsay's will, and another to a stranger, who thereupon signed the agreement at $100 per share.

Pending litigation in the common pleas the company decided to increase its capital stock, whereupon the following notice was sent to the administrator of John S. Lindsay's estate :

" At a meeting of the stockholders of the James C. Lindsay

Hardware Company, held May 31, 1902, the capital stock of the said company was by unanimous vote increased from $150,000 to $250,000.

"Subsequently the board of directors of the company held a meeting and unanimously adopted a resolution ratifying the action of the stockholders in increasing the capital stock of the company from $150,000 to $250,000, and that the stock be issued to subscribers payable in cash in installments at the call of the board of directors, ten days' notice to be given the subscribers from time to time as calls are made.

"Section 3 of article 3 of the by-laws of the company reads as follows :

"' Whenever the capital stock of the company is increased, each bona fide owner of the stock of the company shall be entitled to purchase an amount of stock in proportion to the number of shares he holds with the company at the time of such increase at the par value of the same.'

"If the estate of John S. Lindsay, deceased, elects to purchase its proportion of the increase of the capital stock of the company or any part thereof, please make that fact known to the undersigned not later than the 25th inst., stating what proportion of the increase the said estate desires to purchase.

"In the event of receiving no response to this notice by the 25th inst., it will be understood that the said estate does not desire to participate in the increase, and the stock will be sold to such other parties as subscribe and pay for same."

To which notice the administrator promptly responded that he would "take and pay for the number of shares to which he was entitled." The day after the date of this acceptance, the company, by its president, responded that:

"When notices were issued by the company as to the manner in which the stock would be issued, the company should, perhaps, have called your attention to the fact that the ownership of the stock in the estate of John S. Lindsay is in dispute, and will not be determined until the Supreme Court of this state has passed on that question, so that, under the circumstances, the board of directors will not issue to the said estate any of the increased stock at the present time. It will, however, set aside the pro rata amount to which the said estate will be entitled if the court shall determine that the estate

has the right to keep its stock, otherwise the said amount will be issued to the party or parties found to be so entitled."

So a ground of alleged waiver was that the company had continued to pay dividends, but the petitioners answered that until the pending controversy had been settled by the court, they were bound to preserve the status in quo.

It was also suggested that failure to enforce the terms of the agreement as against the estate of James C. Lindsay, deceased, is evidence of waiver, but the surviving stockholders, including John S. Lindsay, were not in circumstances to take his stock, and besides were not bound to do so.

The respondents (1) deny that this court has any jurisdiction to enforce the choice of arbitrators, or fix the value of the stock; but if it has (2) claim that petitioners have waived the enforcement of the agreement; but if not (3) that good will must be taken into consideration as an element in fixing value.

The court entered the following decree:

And now, to wit: January 2, 1904, it is ordered, adjudged and decreed that the value of the shares of the James C. Lindsay Hardware Company, at the time of the death of John S. Lindsay, to wit: November 23, 1900, exclusive of the value of the good will of the business, which does not appear on the corporation's books, was $108\frac{367}{1000}$, and that the average percentum of profit in excess of eight per cent per annum on the capital stock, which excess is one and one-tenth per cent, should be capitalized, and then would be the value of the good will and that thus the value as shown by the books would be increased by $19\frac{867}{1000}$ for each share, making the total value of each share at that time $128\frac{234}{1000}$, and that the petitioners have the option or privilege of purchasing the 225 shares in the hands of D. G. Lindsay, administrator of said decedent, upon paying that price for the whole, amounting to $28,852.66, together with all earned profits on such shares from the death of John S. Lindsay, until the time of transfer, if transfer there should be, such option or privilege to be accepted within ten days from this date.

On exceptions a mistake in calculation having been discovered the value of the shares was found to be $122\frac{612}{1000}$. The decree was accordingly modified.

*Error assigned* was the decree of the court.

*John D. Brown,* for appellants.

*Charles P. Orr* of *Lazear & Orr,* for appellee.

OPINION BY MR. JUSTICE BROWN, December 31, 1904 :

In Fitzsimmons v. Lindsay, 205 Pa. 79, we held that the agreement of the stockholders of the James C. Lindsay Hardware Company, by which each subscribing stockholder acquired a preferred right, by way of option, to purchase the shares of anyone who died or might withdraw from the business, was a binding contract, supported by a mutual and sufficient consideration. In the proceedings in the court below to enforce its provisions against the appellee, administrator of John S. Lindsay, deceased, there was a decree for its specific performance, as nothing was developed in the evidence as a reason why it should not be specifically enforced.

As the administrator has taken no appeal, the only complaint of the appellants is as to the terms imposed upon them by the court in decreeing that they have a right to exercise their option to purchase the stock of the deceased. These terms involve but two questions : 1st Should the good will of the business have been considered in ascertaining the value of the stock? 2d The appellee having refused to perform the contract of the decedent, though requested so to do by the appellants shortly after his death, if they now elect to take the stock after the ascertainment of its value, should they receive the dividends that have accrued since the death of the deceased stockholder and pay his estate only legal interest on the valuation, the dividends having exceeded that rate?

Though the agreement speaks of the "book value" of the stock, it refers also to the "fair price" of it. Its language is that, if the representative of the deceased stockholder, or one desiring to retire by the sale of his interest, cannot agree with the surviving or remaining stockholders "upon a fair price or book value thereof," then arbitrators are to be appointed, who "shall fix a price" for it. And it is still further provided that if the two arbitrators cannot agree, they shall choose a third party as umpire, and a majority shall fix the

" price," and " at the price so determined " the stock can be taken
or refused.   It is, therefore, manifest, as stated by the court
below, that the contemplation of the parties was a fair value of
the stock as a basis upon which it could be taken ; and what-
ever contributes to such value must be taken into considera-
tion as an element of it.   It is a matter of common knowledge
that beyond the actual value of the tangible assets of a suc-
cessful partnership or corporation there is also a substantial
value in the patronage enjoyed, due to the reputation of the
firm or company for excellence in its business.   Such value is
recognized by the law as good will.   When the partnership or
corporation enjoying it ceases to exist and passes away with no
successor, this good will disappears with it.   But with the
continued successful business life of a partnership or corpora-
tion the good will goes along as one of its assets, to pass to a
successor.   Here the business of the hardware company goes
on and with it the good will which the deceased stockholder
may have helped to bring to it, imparting additional value to
his stock ; and those who would now enjoy the same cannot be
heard to say that good will is no part of its value.   This is but
a repetition in brief of the view correctly held and more fully
dwelt upon by the learned president judge of the orphans'
court.   The correctness of the value of the good will, as found
by the court below, does not seem to be seriously questioned
by the appellants.   There is a simple averment in the argu-
ment of their counsel that there was not sufficient evidence to
justify the finding of the value of the good will.   The answer
to this is that there was, as is pointed out by the court in its
findings of fact.   The real complaint is the court's considera-
tion of this value as an element in ascertaining the value of
the stock.   The assignments of error relating to it are dis-
missed.

It is admitted in the answer of the appellee that shortly after
the death of John S. Lindsay the appellants came to him and
notified him that they desired to avail themselves of the provi-
sions of the article of agreement, and requested him to join in
the appointment of arbitrators to ascertain the book value of
the shares, but that he declined to accede to their request be-
cause he had been advised that the agreement was not binding
upon the estate.   If he had then recognized their rights under

it, and they had elected to take the stock after its value had been then ascertained, the subsequently accruing dividends would have belonged to them. They are not responsible for their delay in saying whether they will exercise the option given them, and any consequences that have resulted from the delay ought not to be borne by them but by the estate whose representative is responsible for it. What, therefore, would now be equitable if they should elect to purchase the stock, is that they pay the estate of the deceased what it would have received if they had taken the same immediately after his death. This will be accomplished by their paying it the ascertained value at the time of his death, with interest at six per cent from that day, and the subsequently accruing dividends will belong to them. The decree of the court below, directing that they shall have the option or privilege of purchasing the 225 shares of stock in the hands of the appellee upon paying the price of $27,587.70, together with all earned profits on such shares from the death of John S. Lindsay until the time of transfer, is modified by directing that they shall exercise such privilege upon paying the said sum, together with legal interest from the death of the said deceased, all earned profits or dividends to belong to them if they exercised the option or privilege.

The decree, so modified, is affirmed without costs on this appeal to either of the parties.