BOHNSACK *v.* DETROIT TRUST CO.

1. CORPORATIONS—CONTRACT TO MAINTAIN CLOSE CORPORATION—INSURANCE.

A contract between the several organizers and members of a close corporation to maintain it as such a corporation by agreeing to sell their stock to those remaining should any one desire to dispose of it and to have the corporation pay premiums on life insurance policies with a trustee as beneficiary, which trustee was to have the deceased's stock appraised under a method agreed upon and transferred to the remaining members and proceeds paid to deceased's estate, was of mutual benefit and for sufficient consideration.

2. INSURANCE—INSURABLE INTEREST—CLOSE CORPORATIONS.

An insured has an insurable interest in his own life with right to designate as beneficiary a trustee who is directed to carry out the terms of a contract to maintain a close corporation as such.

3. SAME—INCIDENT TO MAINTENANCE OF CLOSE CORPORATION.

Contract between members of a close corporation whereby they agreed to maintain it as such by sale of their respective interests to remaining stockholders and by taking out insurance payable to a trustee who was to pay a decedent's estate from avails of policy and turn over stock to remaining members was not void because of insurance feature as it was not a speculation in human life but a protection, by mutual desire, of business relations and interests.

4. EXECUTORS AND ADMINISTRATORS—STOCK OF A CORPORATION SUBJECT TO DECEASED'S AGREEMENTS WITH REFERENCE THERETO.

Shares of stock in a corporation constitute personal property and upon death of the holder do not pass to heirs of the deceased but come to the estate to be administered along with other personal property and the administrator or executor holds them subject to the valid engagements of the deceased with reference thereto.

5. SPECIFIC PERFORMANCE—CONTRACT TO MAINTAIN A CLOSE CORPORA-
TION—INSURANCE—ADEQUACY OF REMEDY AT LAW.
  In suit for specific performance of contract to maintain a close
    corporation which involved an agreement that each member
    should take out insurance payable to a trustee who was to trans-
    fer deceased's stock to remaining members and pay estate
    from avails thereof, designation by one member of wife and
    relatives as beneficiaries in breach of the contract may not be
    disturbed in instant suit brought after his death where they
    were not parties, but his estate was not thereby released from
    performing the contract and giving credit for amount of such
    policy in payment for the stock; an action at law for breach
    of contract not being an adequate remedy as it would in effect
    open the way for holding of stock by third persons and defeat
    the purpose of the agreement.

Appeal from Wayne; Ferguson (Homer), J. Sub-
mitted October 11, 1939. (Docket No. 110, Calendar
No. 40,633.) Decided February 14, 1940.

Bill by George C. Bohnsack against Detroit Trust
Company, executor of the estate of John Pomfret,
deceased, and others for an accounting, for specific
performance of a contract, to compel delivery of
stock and for other relief. Decree for plaintiff. De-
fendant executor appeals. Modified and affirmed.

*Harry H. Mead,* for plaintiff.

*Echlin & Lendzion (Thomas F. Chawke,* of coun-
sel), for defendant executor.

*George Goldstein,* for defendant Fouts.

WIEST, J. This is a suit for specific performance
of a contract.

In January, 1926, George C. Bohnsack, Louis F.
Shields, John Pomfret, Clarence W. Bicking, and
Earl F. Fouts organized the Mich-I-Penn Oil &
Grease Company, a Michigan corporation, with
$50,000 capital stock, divided into 500 shares of $100

par value, and subscribed and paid in $20,000 and each received 40 shares of stock and became its sole stockholders, officers and directors. Mr. Bohnsack financed $14,000 of the $20,000; Mr. Bicking $3,000, Mr. Shields, $1,000, Mr. Pomfret $1,000, and Mr. Fouts $1,000. This left the other stockholders indebted to Mr. Bohnsack for the amount he advanced in their behalf.

It was the declared purpose of the organizers and stockholders to have and maintain a close corporation.

In September, 1926, an insurance policy of $20,000, on the life of Mr. Bohnsack, was taken out to secure his estate in case of his death to the amount of his stock holding and the indebtedness due from his associates. In May, 1931, a stock dividend brought to each stockholder a total ownership of 100 shares. November 14, 1931, the five organizers and sole owners of the stock, still desiring to maintain a close corporation, entered into a written agreement, under seal and acknowledged, which provided that if any one wished to dispose of his shares of stock he should sell to his fellow stockholders and in case of death the transfer should be accomplished as follows: Each stockholder was to take out life insurance to the amount of $20,000, payable to the Union Guardian Trust Company, as trustee, and in case of death of any stockholder the value of the stock in his name should be ascertained under a method agreed upon and the shares of stock turned over to the surviving stockholders and the avails from the insurance applied in payment.

In compliance with the agreement each stockholder took out policies of insurance to the amount of $20,000, with the mentioned trustee the beneficiary, and deposited the same with the trustee, and the Mich-I-Penn company paid the premiums.

In September, 1934, Louis F. Shields and Clarence W. Bicking sold their shares of stock to the other stockholders and were released from the agreement, and the three remaining stockholders agreed in writing that the agreement and trust of November 14, 1931, should continue in full force and effect as to them in the same manner as if they were the sole original parties thereto.

One policy of insurance for $10,000, taken out by Mr. Pomfret, and deposited with the trustee, lapsed and Mr. Pomfret took out another policy for that amount, with his wife and relatives named beneficiaries, and deposited it with another trust company. Mr. Fouts also let one of his policies for $10,000 lapse and then took out another for that amount but did not, as to that policy, comply with the agreement.

Mr. Pomfret died testate December 24, 1934, and the Detroit Trust Company was appointed executor of his estate.

August 19, 1935, Mr. Bohnsack filed the bill herein to have specific performance of the mentioned agreement by the Detroit Trust Company, executor of the estate of John Pomfret, deceased, the Union Guardian Trust Company, trustee, and Earl F. Fouts, and asked that Bohnsack and Fouts be decreed the owners in equal shares of the stock held by Mr. Pomfret and in the hands of the executor of the estate.

Upon hearing in the circuit court, decree to such effect was entered, and the executor of the Pomfret estate reviews by appeal.

Appellant contends that the agreement was a gambling contract; contrary to public policy; stockholders did not have an insurable interest in the lives of one another; the agreement was uncertain, indefinite and impossible of performance; the agreement, if valid, affords remedy only in an action at

law for damages; and the court erred "in finding that the plaintiff and defendant Fouts are entitled to the 100 shares of stock held by the defendant executor, and that those mentioned in the insurance policies as beneficiaries are entitled to the proceeds of said policies."

The agreement mentioned is long and we have given but the purport thereof. We have stated the principal questions presented and if these are found without merit all other points need no discussion.

It was the legitimate desire of the organizers and sole stockholders to have and maintain a close corporation, with consequent benefit, and to that end entered into the contract. The contract was of mutual benefit, upon sufficient consideration, and legitimate, unless it can be said that the insurance feature rendered such part thereof invalid.

Mr. Pomfret had an insurable interest in his own life, with right to designate a trustee beneficiary and direct such beneficiary to carry out his contract.

The validity of the insurance is unquestioned. The contest is over the contract application of the insurance.

The contract carried out the purpose of a close corporation and the insurance feature was in furtherance of that end and was not a speculation in human life but a protection, by mutual desire, of business relations and interests.

In *Fitzsimmons* v. *Lindsay*, 205 Pa. 79 (54 Atl. 488) (syllabus), it was held:

"An agreement among all the stockholders of a private trading corporation that in the event of the death of any one or more of the parties, the remaining stockholders shall have the option to purchase and acquire the stock of the deceased party at its book value, is not illegal, against public policy, or an improper restraint upon alienation."

That was a suit to enforce specifically an agreement by a decedent that his fellow stockholders in a corporation should have the option right to purchase his shares upon his death. The mentioned holding was upon a demurrer and the case came before the court again upon the merits in *Lindsay's Estate*, 210 Pa. 224 (59 Atl. 1074), and the representative of the deceased stockholder was required to perform the agreement.

The insurance feature here involved was considered in *Coe* v. *Winchester*, 43 Ariz. 500 (33 Pac. [2d] 286), where it was held, quoting syllabus:

"Contract providing that each partner should subscribe to life insurance and pay for it from partnership assets and, on death of one, survivor should take over other's interest in business and wife or heirs of deceased should receive insurance, held valid as executory agreement and not invalid as testamentary disposition of wife's community interest, where evidence showed partners acted in good faith and contract was beneficial to widow."

Shares of stock in a corporation constitute personal property and upon death of the holder do not pass to heirs of the deceased but come to the estate to be administered along with other personal property and the administrator or executor holds them subject to the valid engagements of the deceased with reference thereto.

When Mr. Pomfret took out the mentioned policy, with his wife and relatives named beneficiaries, it was in breach of the contract but valid as to the beneficiaries and may not be disturbed as to them in this proceeding inasmuch as the beneficiaries are not parties, but that does not release the estate from performing the contract and giving credit for the amount of that policy in payment for the shares of stock.

In this respect the decree in the circuit court is modified and will conform to what we have just stated. The agreement was valid and under it the plaintiff is entitled to have specific performance.

An action at law to recover damages for breach of the contract would not afford adequate remedy but, in effect, destroy the very purpose of the agreement by opening the way for holding of the stock by third persons.

The decree, with the modification mentioned, is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, McALLISTER, and BUTZEL, JJ., concurred.