WOOD *against* THE AUBURN AND ROCHESTER RAIL ROAD COMPANY.

Under the act incorporating the Auburn and Rochester Rail Road Company, the corporation was authorized, after determining upon the line of its road, but before it had filed its certificate of location, to acquire lands for the construction of the road by purchase, or by an agreement to purchase at a price to be fixed by arbitrators.

Where its officers were intrusted with the power of making purchases, and they, without express authority from the company, were in the habit of agreeing upon a price by a submission to arbitrators, and the awards in such cases were paid by the company's financial officers, under a general resolution to pay the amount they directed, *held*, that the officers had power to submit the question of price to arbitrators, and their award was binding on the company.

In such case, if the instrument of submission be one which, without seal, would bind the company, it is not invalid because executed by a subordinate agent under seal.

Where it is submitted to arbitrators to determine the value of land to be taken for a rail road across the farm of one party and the damage which he will sustain by reason of the road running across it, an award of damages need not specify separately the sum fixed for the value of the land, and for the damages. All that is necessary is that the whole is considered. (*a.*)

By the act for the incorporation of the Auburn and Rochester Rail Road company, passed May 13, 1836, the company was authorized to select a route for its road, and in case of an inability to purchase the right of way of any proprietor of the lands, required to apply by petition to the first or senior judge of the county, who, upon being shown that certain conditions had been complied with, was authorized to draw from the grand jury box a jury of appraisers to make an appraisement of the damages the proprietor would sustain by the appropriation of the lands for the road. The act also provided for the method of making the appointment and its confirmation, and the

(*a.*) WILLARD and TAGGART, JJ., dissented from the opinion of the court.

payment of the moneys appraised in order to the passing of the title to the company. The plaintiff in this action was the owner of a farm in Farmington, Ontario county, over which the route of the road was located by the company. The company being unable to agree with him for the purchase of a right of way, on the 8th of June, 1840, commenced proceedings for obtaining the appraisement of his damages, and had proceeded so far as to have the jury of appraisers appointed, and the 13th of June, 1840, fixed for the meeting of the jury, when Robert Higham, the commissioner of the road, with Simon Traver, an engineer in the employment of the company, agreed with the plaintiff to submit the appraisement of his damages to three arbitrators, one to be selected by the company, one by the plaintiff, and the third by the company and plaintiff together. For the purpose of selecting the arbitrators and executing a proper submission, it was agreed that Higham and the plaintiff should meet at Canandaigua on the 4th of July, 1840, Higham at the time saying that he might not be able to attend, but in case he should be absent the plaintiff could consummate the submission with Traver, who was authorized to act for the company, and any arrangement made with him in relation to it would be valid. In pursuance of this arrangement the plaintiff went to Canandaigua on the 4th of July, and there met Traver and Henry B. Gibson, the president of the company, when the plaintiff selected one of the arbitrators, and Traver and Gibson one, and they agreed to defer the selection of the third until the 6th of July, when Traver and the plaintiff agreed upon the third arbitrator, and a submission was entered into under seal, executed by Traver on behalf of the company, providing for an award by any two of the arbitrators. By the terms of the submission after reciting that the plaintiff and the company had been unable to agree "upon the price of the land, or the damages to be paid to him by the company by reason of crossing his land with the road," it was agreed that the arbitrators should "ad-

EL. IV.—21.

judge, determine and appraise the value of the land [of the plaintiff,] which shall be required for the company for their road, and the damage which he will sustain by reason of the road running across his land." The appraisement took place the same day, and two of the appraisers made an award, pursuant to the submission. The award, after reciting that the plaintiff and the company having failed "to agree upon the damages which the company should pay to him for so much of his farm as should be used or injured by the running of the road across the same," had agreed to submit "the question of such damages" to the arbitrators' award; and that the three arbitrators having met and heard the proof and allegations of the parties, the subscribers, two of the arbitrators, "award and determine that the said the Auburn and Rochester rail road company shall pay to the said Joseph Wood, as his damages by reason of the rail road running across his said farm, the sum of six thousand and fifty dollars, to be paid before the said company enters on or takes possession of the said land; and on the payment of the same, the said Wood is to give to the said company a good title to the said land, &c." The company was dissatisfied with the award and refused to pay it, and obtained leave of the proprietor of the lands adjoining, to run its road around the plaintiff's farm, and laid its track so as to avoid it, and commenced running its cars from Canandaigua to Rochester upon such track about the first of September, 1840. In February, 1841, the company commenced proceedings anew to obtain an appraisement of the plaintiff's lands, with a view to the appropriation of the track of the road first located. The plaintiff appeared and objected to the proceedings at each step, but they were carried to an appraisement, the jury assessing the plaintiff's damages at three thousand dollars. The plaintiff then filed his bill in chancery before the chancellor, against the company, Gibson, Higham and Traver, praying that they might be perpetually enjoined from entering upon his lands, or in case they should

be permitted to enter upon and take them for the road, that the company should be compelled to pay him the award of the arbitrators.

The defendants answered, not denying the facts above stated, but insisting that at the time the arbitration was entered into, the line of the company's road had not been located in the manner provided in the act of incorporation, and that after its location was established, in 1841, the second attempt at an appraisement under the statute was made. In relation to the arbitration the answer expressly admitted that it was entered into by Traver, on behalf of the company, Gibson, the president, however, assenting thereto, and denied that the defendants had ever insisted that Higham, Traver and Gibson had no authority to make the submission. In relation to this power it stated that no special or direct authority had ever been given to Higham, Traver or Gibson to enter into any agreement of submission to arbitrate upon the price to be paid for lands required; but that Higham was authorized by the company as its general agent to make agreements for acquiring the title of the lands necessary for its purposes, and that it became necessary for him to employ assistants for the purpose, and he employed Traver as an assistant, who acted in this business with the knowledge of the company, but without any special authority, in making numerous contracts and agreements with the owners of land for the purchase of their land for the road: that in cases where no great differences existed between the owners of land and Higham or Traver as to the price of the lands of such owner and the damages they would sustain, Higham and Traver being willing and even desirous of the opinion of discreet and disinterested men, did without any special authority for that purpose from the company, submit the value of the lands of such owners and their damages to the award and decision of arbitrators chosen as was agreed upon by such owners and Traver and Higham respectively,

all of which submissions when made were made without the knowledge or direction of the board of directors of the company, and the awards when made were generally, and for aught that the defendants knew or believed to the contrary, paid by the financial officers of the company on the direction of Higham and Traver, as and for the consideration price of the lands thus acquired by them for the use of the company, under a standing order or direction of the board of directors to such officers to pay for lands the title to which for the use of the company should be acquired by Higham. The defendants, however, submitted to the court whether the company was bound by such a submission, and alleged, moreover, that the appraisement was unfairly made, and the damages awarded inordinate.

Proofs were taken, but with the exception of an unsuccessful attempt to show unfairness in the selection of the third arbitrator, they were confined to the amount of damages which the plaintiff would sustain by the construction of the road across his farm.

The cause was heard before Hon. AMASA J. PARKER, then vice chancellor of the third circuit, who, on the 2d day of April, 1846, made a decree that the submission between the company and the plaintiff was a valid one, and that the award made in pursuance thereof was binding upon the company, and directing the payment to the plaintiff of the amount awarded, with interest. It also ordered an injunction to restrain the corporation from constructing its track across the plaintiff's farm until the moneys were paid, and required the plaintiff on being paid the amount to convey the land in relation to which the award was made. As to the defendants Higham, Traver and Gibson, the bill was dismissed without costs.

The company appealed from the decree. The appeal was heard at a general term of the supreme court held in the sixth judicial district in September, 1850, and the de-

cree affirmed. The company thereupon brought an appeal to this court.

*A. Worden* for appellants.

*S. Stevens* for respondents.

JOHNSON, J. Having come to the conclusion that the award in this case was binding upon the company, I do not think it necessary to consider the authority of the company to procure the subsequent appraisement of damages under the statute, or any of the questions relating to that proceeding. The valid award of course renders them inoperative. I can not find either in ch. 349 of the Laws of 1836, or ch. 290 of 1838, any warrant for holding that the rail road company could not by purchase acquire the title to real estate for their road, until all the provisions of § 4 of the first mentioned act, as to designating the route of their road, were complied with. The route between Canandaigua and Rochester, had in point of fact been fixed upon, and that portion of the road was almost completed, and title had been acquired or arrangements of a satisfactory character for acquiring title entered into with the owners of all the lands on that part of the route except the complainant, (*Ans. fol.* 179,) before the agreement for arbitration was entered into. If the question related to the power of the company by appraisement to acquire the title to land, it may be that we should hold that the filing of the certificate of the route under § 4, was necessary as a condition precedent, but I do not think either the reasons for a such a construction, or the language of the act, require us so to hold in regard either to purchases or voluntary grants and donations. The authority conferred upon the corporation to acquire land by purchase, is very broad, and it would not be possible to deny that they were purchasers of this land, if they had performed the award. The corporation and the owner

were each competent to contract in reference to the price, and I see no objection to their agreeing to pay. and his agreeing to receive such sum as the price as the arbitrators should fix.

With reference to the authority of Higham and Traver to make the submission, the case stands upon the answers of the defendants, which though they deny that those parties had any express authority from the board of directors, do state that Higham was the general agent of the company and as such had made agreements for land for the road: that both he and Traver before the agreement with the complainant to submit, had submitted the claims of other individuals both for land and damages, to arbitration, and that all such agreements had been carried into effect by the company: that no special or direct authority to make submissions was ever given by the company to Higham or Traver, but that Higham was authorized by the company as their general agent to make agreements for acquiring the title to lands for the road, and that there was a standing order of the board of directors, to the financial officers of the company to pay for such lands as Higham should procure for the company: that Higham under this authority found it necessary to employ an assistant and so employed Traver, who accordingly acted and with the knowledge of the company made numerous contracts for the purchase of lands: that Higham and Traver did in sundry cases make submissions of the price of lands to arbitrators agreed upon by them and the owners of lands, and that the awards thereupon were paid by the financial officers of the company, under the authority before mentioned. The answer in the same connection says, "all which submissions when made, as these defendants Higham and Traver say, were made without the knowledge or direction of the board of directors of said company."

As to this last allegation, it is proper to observe, that the company takes no such ground on its own behalf, and that

the allegation after all only amounts to this, that when the submissions were made the company was ignorant of the fact.

Upon these allegations I do not see how it is possible not to hold that Higham and Traver each had authority to submit such a question of price to arbitration, and this not upon the ground that having been held out by the company as possessing authority, they are estopped to deny it as to any one who has relied upon their acts, but upon the broader ground that it is impossible not to find that authority actually existed, where the agents have repeatedly pursued a particular course of conduct, and the company as often have ratified their acts by treating them just as if authority actually existed. ( *U. S. Bank* v. *Dandridge*, 12 *Wh.* 69.)

As the submission, although executed under seal, is such an instrument as would be valid without seal, it can not be objected that Traver's authority to execute it was not under seal. It is still the agreement of the company. ( 1 *Selden*, 229, *Worrall* v. *Munn.*)

The submission states that it is agreed between the company and Wood that for the purpose of appraising the value of the land which the company shall take and require of him for the road, and the damage he will sustain by reason of the road passing across his land, they submit to three arbitrators named to adjudge, determine and appraise the value of the land of Wood which will be required by the company for their road and the damage which Wood will sustain by reason of the road running across his land.

The award, after reciting that the parties had failed to agree upon the damages which the company should pay to Wood for so much of his farm as should be used or injured by the running of the rail road across the farm, and had agreed to submit the question of such damages to the arbitrators, awards that the company pay him as his damages by reason of the rail road running across his farm, six

thousand and fifty dollars. The indefiniteness of the specification of the ground intended to be covered by the damages awarded, if it would otherwise be a sufficient objection, is cured by the recital in the first part of the award, which shows that the arbitrators had in view, in their estimate of damages, both the value of the land and the injury to the residue of the farm by crossing it with the rail road. That these sums are not separately stated is not material. All that the submission requires is that all the matters shall be decided on, but as it does not specify that there must be a separate assessment as to each, and the award itself shows that both matters are included, no objection can be made upon that ground.

Omitting to notice the question whether in this suit the defendants are at liberty to attack the award for any matters not appearing upon its face, I proceed to consider the question whether corruption or partiality is made out against the arbitrators. It is not denied that to authorize a court to interfere upon these grounds, they ought to be made out plainly. As to evidence tending to show corruption or partiality otherwise than as an inference from the amount of the award, I think it is not to be found in the case. There is evidence that Wood called on Aldrich, afterwards one of the arbitrators, and spoke with him in reference to being a witness, and asked him to look at the route of the road through his farm, and although a nice sense of honor might have restrained him from even this much communication with one whom he proposed to select as an arbitrator, if indeed he then had that intention; still there is nothing which begins to make out a case of partiality or corruption. With respect to the amount of the award, although I may individually feel surprised that lands in Farmington should possess so high a value, yet, looking to the evidence, I can well understand how the arbitrators, without subjecting themselves to any charge of misconduct, might assess the damages at the high rate which in this case they have awarded. A large number

Wood *against* The Auburn and Rochester R. R. Co.

of witnesses swore to valuations as high, and some higher while a nearly equal number on the part of the defend- ants swore to a much smaller valuation. Upon the evi- dence as it stands, I do not think any court at the present day would set aside a verdict of the same amount as against the weight of evidence. Much less true should we regard the amount of damages as proof of corruption or partiality. Upon the whole matter I think the decree be- low should be affirmed.

MASON, J., read an opinion in which he arrived at the same conclusions with Judge Johnson.

RUGGLES, Ch. J., GARDINER and MORSE, JJ., concurred.

WILLARD, J., was in favor of a reversal of the decree of the vice chancellor, and a dismissal of the bill of com- plaint without prejudice to the plaintiff to enforce his award by an action at law.

TAGGART, J., was in favor of a reversal of the decree and the dismissal of the bill absolutely.

JEWETT, J., being a stockholder in the company gave no opinion.

.        Decree affirmed.