## DUVALL et al. v. SULZNER et al.

(Circuit Court, W. D. Pennsylvania. August 21, 1907.)

### No. 33.

1. ARBITRATION AND AWARD—VALIDITY OF AWARD—NOTICE OF HEARING.

Mere statements made by one claiming the ownership of certain stock of a corporation that, if he recovered it, he would use or dispose of it for the benefit of the corporation, did not constitute a transfer which gave the corporation the right to notice of a hearing before arbitrators to determine the ownership of the stock under an agreement to which it was not a party, or to join in a bill to set aside the award and for the recovery of the stock.

2. SAME.

A dispute having arisen between several persons as to the ownership of certain shares of stock in a corporation, an agreement was made to submit all questions as to such ownership to arbitration, and arbitrators were selected, the most of whom were stockholders, and had heard the claims of the respective parties discussed. Complainant, who was one of such parties, after the arbitrators were selected, repeatedly stated to them that he had said all he wished to say, and that, as he was going away, they should proceed without him, which they did, making an award before his return. *Held*, that complainant could not impeach the award because no notice of the hearing was given to him, nor because the arbitrators may have considered evidence which would not have been admissible in court, having evidently intended that they should do so in respect to his own claim.

3. SAME—IMPEACHMENT OF AWARD—GROUNDS.

An allegation that arbitrators acted "with manifest unfairness, and with such partiality as to destroy the judicial character of the proceedings," does not state any ground for impeachment of their award, in the absence of any allegation that the party benefited participated in any misconduct or was guilty of fraud or collusion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Arbitration and Award, §§ 322, 415.

Setting aside award for interest, prejudice on misconduct of arbitrator, see note to Nolan v. Colorado Cent. Consol. Min. Co., 12 C. C. A. 589.]

4. SAME—WAIVER OF OBJECTIONS.

A party to an arbitration agreement who voluntarily joins in the selection of persons as arbitrators, who are known to have formed opinions upon the merits of the controversy, cannot impeach the award on the ground that the arbitrators were not impartial.

In Equity. On plea.

Patterson, Sterrett & Acheson, for complainants.
J. M. Shields, for respondents.

EWING, District Judge. Upon the organization of the Gold Bullion Mining & Development Company, 250,000 shares of the capital stock, of the par value of $1 per share, were given William B. Duvall, in consideration of his transfer to said company of certain options on mineral lands in Mexico. One hundred and twenty five thousand shares of this stock said Duvall put aside, and proposed appropriating towards financing and developing the property of said company.

The finances of the company were causing some trouble, and some time during the year 1904 certain certificates of stock were placed in escrow with the Mercantile Trust Company, under the following agreement:

"The undersigned, being the owners of the certificates of stock of the Gold Bullion Mining & Development Company, which are herewith inclosed, have agreed as follows:

|  | No. | Shares. |
|---|---|---|
| Joseph F. Sulzner | 21 | 26,250 |
| L. L. Duvall | 4 | 62,500 |
| E. P. Coles | 14 | 1,667 |
| M. D. Judah | 24 | 24,583 |
| K. C. Tebbetts | 25 | 26,250 |
| Jos. F. Sulzner | 22 | 5,000 |
| E. P. Cole | 20 | 26,250 |
| E. P. Cole | 13 | 5,000 |
| W. B. Duvall | 11 | 57,500 |

"(1) The certificates are hereby deposited in escrow in the hands of the Mercantile Trust Company, upon the following condition and purposes:

"(2) To prevent the parties named in certificates from selling or transferring the same pending the organization and financing of the Company.

"(3) The sum of $12,500 shall be raised in cash, by sale of stock, and paid into the treasury of the company on or before the 1st day of January, 1905, and if so paid in, then upon the certificate of the Company Treasurer showing that fact, the said The Mercantile Trust Company, Trustee, is authorized thereupon to deliver the said parties respectively, the certificates above mentioned.

"(4) Should the parties signing this paper fail to raise the money as above (No. 3) stated, then the said the Mercantile Trust Company, trustee, shall (and hereby authorized to) deliver all of the said certificates to W. B. Duvall.

> "Jos. F. Sulzner. [Seal.]
> "E. P. Cole. [Seal.]
> "W. B. Duvall. [Seal.]
> "M. Douglas Judah. [Seal.]
> "K. C. Tebbetts. [Seal.]
> "For J. C. Tebbetts, Atty."

The certificates embraced in said deposits numbered 21, 24, 25, and 20, aggregating 103,333 shares of said stock, constituted what was then left of the 125,000 shares which Duvall purposed using in financing the company and developing its property; the balance of the stock having been disposed of. The terms of the agreement under which said stock was deposited were not complied with, and in January, 1905, according to the provisions of said agreement, this stock was returned to Mr. Duvall, and he then obtained from the company one certificate for said 103,333 shares in his own name. Subsequently he delivered that certificate, after having signed the power of attorney on back thereof for its transfer, to Joseph F. Sulzner, and said Duvall, as against it, gave orders to various parties for certain blocks

of the stock represented thereby. This certificate Sulzner turned over to the company, and received in exchange therefor a certificate to himself as trustee.

Thus matters stood until January, 1906, when, on the 6th of that month, Duvall filed a bill in equity in this court at No. 19 May term, 1906, against Sulzner, praying for an injunction to restrain Sulzner from voting that stock at the annual election of the company to be held on January 9, 1906, and for an order directing said stock certificate to be delivered up to the company and a new one, representing the same amount of stock, to be issued in his name. The injunction was not granted; but at the meeting on January 9th there was considerable discussion about the trouble among the stockholders regarding this stock, and the proposition was made that the entire matter be settled by arbitration. At that meeting Mr. Duvall moved "that a committee be appointed to arbitrate the differences between all parties claiming equity in the 103,333 shares of stock of the Gold Bullion Mining & Development Company and William B. Duvall, that the stockholders appoint a man to represent the stockholders' interest, and Joseph F. Sulzner appoint a man and William B. Duvall appoint a man, and these three men appoint two men, and all parties in interest in said 103,333 shares of stock of the Gold Bullion Mining & Development Company shall agree to whatsoever the committee may decide upon," which motion was carried. It was also moved and carried at said meeting that Thomas Maxwell be selected to represent the stockholders on such committee. Pursuant to this action of the stockholders of said company, Duvall and Sulzner agreed that the committee of arbitration should settle all matters regarding this stock, and Mr. Duvall selected Henry D. Gamble, one of the stockholders, as his representative, and Mr. Sulzner selected Harvey Miller, another stockholder and his attorney, to represent him, and subsequently these gentlemen and Mr. Maxwell, with the acquiescence and agreement of Messrs. Duvall and Sulzner, selected H. G. Moore, another stockholder and director of this company, and James G. Marks, as the other members of the board of arbitration. Just when this board was completed does not clearly appear; but on the afternoon of January 10th all the arbitrators, unless Mr. Marks be excepted, as to which there is considerable difference of opinion, and Mr. Duvall, Mr. Sulzner, Mr. Tebbetts, and others, met in Mr. Gamble's office in the Federal Building, Pittsburgh, and completed all preliminary arrangements respecting arbitration.

The arbitrators held several meetings, the first on January 22d, and concluded their labors and made up their award on January 26, 1906. The agreement of arbitration executed by the parties, and the award made pursuant thereto, are as follows:

"Memorandum of Agreement.

"Whereas disputes have arisen between William B. Duvall, Joseph F. Sulzner, J. C. Tebbetts, I. L. Courrier, M. D. Judah, and E. P. Cole, stockholders in the Gold Bullion Mining & Development Company, as to the ownership of shares of stock in said Gold Bullion Mining & Development Company, and whereas suit has been instituted in the court of common pleas, No. 3 of Allegheny county, Pa., by E. P. Cole, Joseph F. Sulzner, William B. Duvall, and the Gold Bullion Mining & Development Company respecting a portion of the

stock of said company, and a suit instituted in the United States Circuit Court by William B. Duvall against Joseph Sulzner representing a portion of the stock of said company, and that certain other parties claim an interest in said stock.

"And, whereas, at the annual meeting of the stockholders held at the office of said company in the city of Pittsburgh, Pa., on the 9th day of January, 1906, it having been proposed and agreed by and between all of the parties to said disputes that the same be submitted to a committee of five as therein provided, to be selected to arbitrate and settle all matters in dispute concerning the same, which said resolution was unanimously adopted.

"Now, therefore, in pursuance of the verbal agreements and the said resolution above mentioned and in confirmation of the same, we do hereby agree to, and do submit all our rights and claims in, to, and concerning the stock of the Gold Bullion Mining & Development Company, and all disputes concerning the same, and do hereby select and appoint Thomas Maxwell, II. D. Gamble, Harvey A. Miller, G. H. Moore, and James G. Marks as a committee to arbitrate and adjust all said difference, disputes, and claims.

"Now, therefore, this agreement witnesseth:

"First. That the said parties hereto agree to submit their rights in and to the said stock to the Committee of arbitrators above named, and shall present to the said committee such evidence of their rights as may be relevant and proper.

"Second. That the said arbitrators, or a majority of them, acting as such committee or board, shall have the right and authority to hear and determine all matters in dispute between the parties hereto in and concerning the said stock, and shall set forth what portion, if any, of the said shares of stock is to be awarded to the various parties claiming a right or interest therein.

"Third. That the award of the said arbitrators shall be made in writing, and signed by the said arbitrators, or a majority of them, and a copy thereof delivered to each of the parties hereto, or mailed to their respective post-office addresses; and such award, when so made, shall be binding and conclusive upon the parties hereto without any right of action at law, or in equity, concerning the subject of this arbitration.

"Fourth. That the said William B. Duvall and the said E. P. Cole, in consideration of this agreement and by submitting their claims concerning the said stock to the said arbitrators, hereby settles and discontinues the said suits in the United States Circuit Court for the Western District of Pennsylvania, at No. 19 May term, 1906, and the said suit in the court of common pleas No. 3 of Allegheny county, Pa., at No. ―――― November term, 1905, and agree to pay all costs therein accrued.

"Witness our hands and seals this 10th day of January, A. D. 1906.

"W. B. Duvall. [Seal.]
"Jos. F. Sulzner. [Seal.]
"J. C. Tebbetts. [Seal.]
"E. P. Cole. [Seal.]
"I. L. Courrier. [Seal.]
"M. D. Judah. [Seal.]
"By I. L. C.,
"By virtue of assignment.

"Witnesses."

"Award.

"We, the undersigned, being the arbitrators agreed upon by William B Duvall and Joseph F. Sulzner and others, by agreement dated January 10, 1906. to hear and determine the claims of the said parties in and to the ownership of 103,333 shares of the stock of the Gold Bullion Mining & Development Company, and to make an award concerning the same, and to set forth what parties are entitled to the said stock, or portions thereof, as set forth in said agreement, hereby certify that we have heard the claims of the said parties and such evidence as they desired to offer, and, upon due consideration thereof, hereby make our award pursuant to the said agreement and adjudge

155 F.—58

and determine that the parties hereinafter named are entitled to the said stock in the portions set opposite their respective names; that is to say:

| | |
|---|---:|
| To H. G. Loupold, 5,000 shares.............................$ | 5,000. |
| " Thomas Maxwell, 1,000 shares............................ | 1,000. |
| " G. H. Moore, 1,000 shares............................... | 1,000. |
| " W. J. Aber, 1,000 shares................................ | 1,000. |
| " Henry Hetzel, 25,000 shares............................. | 25.000. |
| " Piedro Pinelli, 2,500 shares............................ | 2,500. |
| " V. M. Reynolds, 500 shares.............................. | 500. |
| " ——— Recker, 2,500 shares.............................. | 2,500. |
| " L. T. Yoder, 1,250 shares............................... | 1,250. |
| " E. P. Cole, 500 shares.................................. | 500. |
| " I. L. Currier, assignee of Judah, 500 shares............... | 500. |
| " J. C. Tebbetts, 5,000 shares............................. | 5,000. |
| " Jos. F. Sulzner, 80,083 shares........................... | 80,083. |
| Total ...............................................$103,333. | |

"In witness whereof we have hereunto set our hands and seals this 26th day of January, 1906.

"Thomas Maxwell. [Seal.]
"G. H. Moore. [Seal.]
"Harvey A. Miller. [Seal.]"

At the time these meetings were held and the award made, Mr. Duvall and Mr. Tebbetts were both away; the former having left for New York on the evening of January 10th, and the latter for California the same day. When Mr. Duvall returned and learned what the action of the arbitrators had been, he was very much dissatisfied, and that dissatisfaction resulted in the preparation and filing of the bill in this case. This bill set forth more at length the history of the transaction than that given above, but substantially the same, and alleges that the amount of said stock awarded by the arbitrators to Joseph F. Sulzner, towit, 80,083 shares, "was rightfully, and is still rightfully, the property of your orator, William B. Duvall, except in so far as he may desire to use the same for the benefit and promotion of the said company." The averments of the bill respecting the action of the arbitrators are embraced in the twelfth and thirteenth clauses thereof, and are as follows:

"That notwithstanding this was their plain and known duty, they proceeded, while your orator, William B. Duvall, was in Mexico, and the said J. C. Tebbetts was in the state of California, to meet and decide the questions in dispute without notice to them and without hearing any evidence, at least in so far as the rights of your orators and the said J. C. Tebbetts or any of them were concerned, and against the written protest of one of the arbitrators, a copy of which said protest, marked 'Exhibit B,' is hereto attached and made a part of this bill of complaint, and against his withdrawal and refusal to act as one of said arbitrators, attempted to determine the matters in dispute and made their finding and award in writing, a copy of which said finding and award, marked 'Exhibit C,' is hereto attached and also made a part of this bill of complaint.

"Thirteenth. That said attempted award and determination of the said committee of arbitration is illegal and invalid and not binding upon your orators, William B. Duvall and other parties to said agreement (Exhibit A), for the reason that the said committee of arbitration proceeded in entire disregard of your orator's, William B. Duvall's, rights, without such hearing as is provided by the agreement of submission, and without giving your orator, William B. Duvall, any opportunity to establish his right in said stock by evidence to that end and against the protest and withdrawal of one of the said arbitrators, and against the dissent of another of said arbitrators. And your orator, William B. Duvall, further avers that the majority of the said

committee of arbitration, so acting and attempting to pass upon the title of said stock and to decide the said controversy, did act throughout the whole of said proceedings with manifest unfairness, and with such partiality as to destroy the judicial character of said proceedings, and to render said arbitration invalid and illegal."

To this bill the defendants have filed a plea, setting up the agreement to arbitrate and the award made pursuant thereto, and also the former bill filed by Duvall v. Sulzner, at No. 19, of same term (no opinion written), to which the plaintiffs have filed a replication joining issue on the averments of the plea.

It may be added that at the time Duvall filed his bill at No. 19 May term of this court, E. P. Cole, one of the defendants, had also filed a bill in equity in the court of common pleas No. 3 of Allegheny county of ——— November term, 1905, for the recovery of a portion of said stock.

In the present bill the plaintiffs state that they are willing that the allotment of stock made by the arbitrators shall stand with the exception of that to said Sulzner, as to which the controversy here is confined. Only defendants Sulzner, Maxwell, Moore, Aber, Hetzel, and Yoder join in the plea. The defendant Pinella has never been served, and is without the jurisdiction of this court.

The real contention in this case is between Duvall and Sulzner. The Gold Bullion Mining & Development Company really has no vested interest, and whatever it may acquire it must acquire through Duvall. It is alleged that at the meeting of the stockholders on the 9th day of January, 1906, Duvall made a declaration, and repeated it, that whatever interest he had should go to the company; but, while he did make some statements of that character, it is not shown by the testimony that he ever made any absolute renunciation of his right to this stock, or any valid transfer of his equity therein to the company. He states in that bill, in paragraphs 5 and 6, that he set apart 125,000 shares of his stock to promote the company's capitalization and development, and, in paragraph 8, that he is holding this stock, in part at least, for the promotion of the interests of the said corporation, while in paragraph 10, as above quoted, he still claims the property as his own. In paragraph 14 he alleges that he has determined to use said stock to the best interest of the plaintiff company and to transfer the same to it as and when the same may become vested in him. In paragraph 3 of the prayer he asks that the 80,083 shares be adjudged the property of the Gold Bullion Mining & Development Company and be delivered to it, and in paragraph 4 asks that the said 80,083 shares of the capital stock of the said Gold Bullion Mining & Development Company may be decreed and declared to be the property of the Gold Bullion Mining & Development Company, subject to the sale of such part thereof as may be necessary to reimburse the said William B. Duvall for the costs and expenses of this litigation, etc. It will thus be seen that the development company has no interest other than what Duvall may see fit to confer upon it, and that it has no title except what it may get through him. Notwithstanding his present declarations, in the bill which he filed on the 6th day of January, Duvall expressly claimed title in himself, and prayed that a decree be made requiring the

whole block of stock to be retransferred to him. The declarations made by Duvall at the meeting on January 9th, as well as those contained in his present bill amount to nothing more than a declaration of intention on his part to use that stock, if he secures it, for the benefit of the company, and do not constitute such a valid assignment or transfer to the company as would warrant it in joining in this bill. The fact of the matter is that the company never did authorize its name to be used in connection with this bill, but after the bill was filed, and some time during the course of the litigation, it does appear that Duvall obtained the consent of some of the officers of the company at least to participate in the expense. However all this may be, the fact is that at the time the arbitration was held the company made no claim to any of this stock, and did not understand that it had any right to make such a claim. A good deal of stress has been laid upon the fact that the stockholders at that meeting elected one of their number to sit upon the arbitration board, and it is argued from that, that it was because of direct interest in this stock by the company that that election was had. But that is explained by the statement of several of the witnesses, to the effect that the company was suffering financially by reason of the dissension among its stockholders, and that at the time they were in need of financial aid, and that the object in having the company participate in the selection of arbitrators was to show the anxiety of the stockholders as a body in having the dissensions removed. Two of the arbitrators, Maxwell and Moore, were members of the board of directors of the development company, and two others, Miller and Gamble, were stockholders, so that, if the company had any claim on this stock or understood it had any right or title to any portion thereof, it would certainly have been declared and upheld by these gentlemen. So far as appears, also, the company has never taken any action indicating that it had any claim or title to this stock, or seeking to enforce any such claim. Sulzner is president of the company, and, if the other stockholders understood that the company itself had any right or title to this stock, or any portion thereof, they certainly would not refrain from taking some action looking towards the enforcement of such right. Altogether there is nothing shown in the testimony to establish any right in the development company to any notice of the arbitration, the lack of which notice is one of the grounds most vigorously urged against the validity of the arbitrators' award, although it is not alleged in the bill of complaint. The bill does allege lack of notice to Duvall and to Tebbetts; but it is sufficient to say concerning notice to Tebbetts that he admits in his testimony that he waived any notice, and he himself makes no complaint respecting it. As to Duvall, the testimony shows overwhelmingly and conclusively that he absolutely and repeatedly instructed the arbitrators to go ahead; that he had nothing further to say; that he had said all he wanted to, and for them to go ahead and dispose of the stock; that he did not care what disposition they made of it—he would be perfectly satisfied. It is alleged that these statements by Duvall were made prior to the completion of the board of arbitrators and prior to the execution of the agreement of submission by Sulzner, and this is probably the case so far as the execution of the agreement is concerned, but it is not the case so far as

the constitution of the board of arbitrators is concerned. All the arbitrators had been agreed upon and determined before the meeting in Gamble's office on January 10th, and, while there is some uncertainty as to whether Mr. Marks was present with the other arbitrators on that occasion, yet the statements then made by Duvall were made with full knowledge of who constituted the board of arbitration, and his instruction was for them to go ahead immediately and dispose of this matter, and his positive declaration was that he did not want to be heard; and it was not until he returned and found that the disposition made was not in accordance with his views that he thought of lack of notice to him as a ground of objection. Four of the members of the board of arbitrators being stockholders in the development company, and having been present at the various meetings when the difficulties between Duvall and Sulzner, and possibly others of the stockholders, were discussed, Duvall knew that they had heard in full his side of the case, and particularly at the meeting on January 9th, when he made several quite lengthy speeches, giving his position in regard to that stock, and informing every one fully of what his claim was. The claim he makes now that he ought to have had notice and been given an opportunity to be heard is an afterthought and without merit.

Tebbetts was present with him in Mr. Gamble's office on January 10th, and it was there and at that time that Tebbetts waived notice, and Duvall's declarations there were to the same effect, only stronger and more positive.

The averments of the bill that the arbitrators decided the question without hearing any evidence is really applicable only to the claims of Tebbetts and Duvall; but, even if they embraced the other claims, they are not supported by the testimony. No one but Duvall is claiming lack of notice, no one but Duvall is alleging lack of evidence, and no one but Duvall is questioning the entire correctness of the award of the arbitrators. All the parties, and it appears from the award that there were quite a number of them, who had or thought they had any claim upon any of this stock, appeared either in person or by attorney, or presented written orders from Duvall for the same, and no one has been shown to have been refused a hearing or to have lacked any notice. The testimony is that the arbitrators heard everybody and everything that was offered before them. As to the character of the evidence, however, there may be some question. The proceeding was not conducted as a proceeding at law, but was a common-law submission, and, as is usual in such cases, the hearings are not so strict and the rules of law and evidence not so much enforced as where the proceedings are conducted under court direction. Duvall evidently expected the arbitrators to act respecting his claim to this stock upon what they had heard from him outside of the meetings of the board of arbitration, in the meetings of the stockholders and officers of the company and elsewhere, and cannot complain that the arbitrators acted upon similar evidence in disposing of the claims of other parties. If he expected, and he unquestionably did, that the arbitrators would act upon that kind of evidence so far as his claim was concerned, he must not object that they did the same thing regarding other claims. In fact, it is hard to understand how the arbitrators would have been expected

to determine the questions before them simply upon representations made to them in their capacity as arbitrators, when, as we have seen, at least four of the five arbitrators had been thoroughly inoculated with the claims and demands of the various parties through the contentions and discussions which had arisen and occurred during the course of the meetings of the directors and stockholders of the company. The evidence perhaps was not of the character that we would prefer, and possibly not so satisfactory as it should have been, but no one is more responsible for that than Duvall himself, for the members of the board and their previous affiliations were all well known to him, and as has been stated, he evidently expected that they would arrive at their conclusion largely upon matters which had come to their knowledge prior to the time of their selection as arbitrators. All this, perhaps, is outside of the pleadings, as there is no allegation that the arbitrators decided the question without evidence, except as to Duvall's own .claim and that of Tebbetts. The arbitrators heard evidence respecting the claims, and evidence of the kind and character that the parties evidently contemplated.

Another allegation of the bill is that the majority of the arbitrators acted throughout the whole proceedings with manifest unfairness, and with such partiality as to destroy the judicial character of said proceedings, etc. It might be sufficient in answer to this allegation of the bill to say that, since it fails to aver any participation or complicity therein on the part of Sulzner, it does not go far enough. "Partiality and some improper conduct of the arbitrators in making the award will not impeach it, unless the party benefited thereby be implicated in that misconduct." Hostetter v. City of Pittsburgh, 107 Pa. 419. In order to sustain such a bill and set aside an award, "it is essential to aver and prove that the party benefited by the award participated in the fraud charged; but evidence that the arbitrator was partial and unfair, and knowingly made an improper decision, is insufficient for that purpose, without evidence that the parties benefited colluded with the arbitrators or practiced a fraud to procure the award." Hartupee v. City of Pittsburgh et al., 131 Pa. 535, 19 Atl. 507. Now, the bill alleges no collusion or participation by Sulzner in any partial or unfair conduct on the part of the arbitrators, or any of them, if such there were; and consequently under these authorities much of the testimony that was taken in this case for the purpose of showing such misconduct and unfairness is incompetent and irrelevant. It may be that the arbitrators were partial, but, if so, what else was to be expected from their associations. Mr. Gamble, who was Duvall's special choice, objected to one of the arbitrators, but Mr. Duvall promptly advised him that he was acceptable to him, and the objection had to be withdrawn. Mr. Duvall knew that Mr. Miller, who for some time had been attorney for the development company, was the counsel of Mr. Sulzner and appeared for him in the former bill filed by Mr. Duvall. Not only that, but in the hearing on that bill, which was heard upon affidavits, Mr. Miller perhaps made the longest and strongest of all the affidavits in Sulzner's behalf, and Messrs. Maxwell and Moore also made affidavits for Sulzner in that case. "If, indeed, parties in controversy choose to waive the right of impartial trial, and purposely and avowed-

ly select as arbitrators persons having formed opinions on the subject-matter, or known to have partialities for and against the respective parties, the court, without commending, will not set aside the award merely because of the character of the arbitrators." Strong v. Strong, 9 Cush. (Mass.) 560. In this case two of the arbitrators themselves had claims on this stock, and by their own award are given 1,000 shares each, viz., Maxwell and Moore, and yet Duvall does not except to that. This only further shows the character and interest of the parties he selected to determine the questions at issue. Some of the testimony goes beyond the allegation of partiality and unfairness, but, since the bill does not aver any corruption, collusion, or fraud, it is unnecessary to go into that in detail. The five arbitrators remained together during all their sittings until it came to the last one, when their award was made up. What that award would be had been pretty definitely ascertained from their discussion at the previous meeting; but its actual determination was then laid over until they should gather together again. When they did have their final meeting, one of the arbitrators presented a written protest, couched in very general terms, and then withdrew. It is evident from that protest that he represented the interests of Mr. Duvall, and was not satisfied with what he apprehended would be the action of the board. Against such a contingency as this the agreement of submission specifically provides, for it only requires that the award shall be made by a majority of the board and that was done. Another member of the board was dissatisfied with its action, and refused to sign the award, but on the back of it entered his protest. His position seems to have been that the stock ought to have been distributed in accordance with the terms of the agreement for the deposit in escrow, according to which Mr. Duvall would have received no portion of it. It will thus be seen that four out of the five arbitrators thought Mr. Duvall was entitled to no part of this stock, while the fifth thought otherwise; but the withdrawal of one of those arbitrators and the protest of the other does not invalidate the award.

Under the pleadings, therefore, and the evidence adduced in support thereof, I am of the opinion that sufficient has not been shown to invalidate the award of the arbitrators, and that the defendants' plea must be sustained.