## MONIDAH TRUST v. ARCTIC CONST. CO.

(Circuit Court of Appeals, Ninth Circuit. April 5, 1920.)

No. 3403.

1. **Landlord and tenant ⊕=201—Appraiser's method of estimating value of leased property not improper.**

Under a lease of unimproved property on which the lessee was to construct a building, providing for reappraisement of the property at intervals as a basis for fixing the rent, it was not improper for an appraiser to capitalize the net income of the building so erected as an aid in determining the value of the land, where he acted in good faith, and used such computation in connection with the testimony of witnesses, who gave their estimates, and where in his opinion the property was adequately improved, and would show as good a net return as any building that could be put on the property.

2. **Landlord and tenant ⊕=201—Appraisers valuing property not bound by rules applicable to arbitrators.**

Appraisers appointed under the terms of a lease to appraise the property as a basis for fixing the rent are not governed by the rules relating to arbitrators, and as long as they act honestly and in good faith they have a wide discretion as to their methods of procedure and sources of information, and generally may inform themselves in any way that an honest seeker for the truth would adopt.

3. **Landlord and tenant ⊕=201—Award of appraisers impeachable only for fraud, misconduct, or mistake.**

An award of appraisers appointed to value leased property as a basis for a readjustment of the rent is subject to impeachment for fraud, or misconduct amounting to fraud, or mistake which is not merely a wrong conclusion, but not for mere errors of judgment upon questions of fact or law submitted.

4. **Landlord and tenant ⊕=201—Acts of appraiser in consulting party appointing him not fatal misconduct.**

The acts of one of the appraisers appointed to value leased property as a basis for fixing the rent in consulting the party appointing him concerning the selection of the third appraiser, and again consulting him before agreeing to the conclusion of the third appraiser, and in stating to the other appraisers that he wished to consult his "principal," was not misconduct vitiating the appraisal, where he did not act under the direction of such party in agreeing to the appraisal.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit by the Monidah Trust against the Arctic Construction Company. From a decree for defendant, plaintiff appeals. Affirmed.

The appellant brought a suit in the court below to set aside an appraisal of the value of land under a lease and for a decree of the court to determine the true value of the land. The lease was made in 1908. It was a lease of unimproved city property for a term of 50 years. It provided that the rent to be paid by the lessee should be upon a basis of 4 per centum per annum net upon the appraised value of the property. The lease fixed the value for the first 5 years of the lease at $540,000, and for the next 5 years at $630,000, and provided that the remaining 40 years of the lease should be divided into four periods, of 10 years each, the value for each 10-year period to be determined by appraisement, each party to the lease to appoint an appraiser, and the appraisers so appointed to appoint a third appraiser, all of whom should be disinterested parties, competent to estimate the value of said property, and it provided that the appraisers should examine the property without the improvements and determine the value thereof, and that the decision and approval of the appraisers, or a majority thereof, should be binding and conclusive upon the parties for the next 10-year period, and that it should be the basis on which the 4 per cent. annual rental should be computed. The lease also provided that the lessee at its own expense should construct within a limited time a commercial building on the premises, at least seven stories in height, the building at the end of the lease to revert to the lessor. After the execution of the lease the lessee went into possession and constructed the building, and paid the agreed rental for the first 10 years.

The appraisal in controversy was made for the 10-year period beginning June 1, 1918. The appraisers were Heitman, selected by the appellant, Nichols, selected by the appellee, and Folsom, selected by the other two. These 3 proceeded to take evidence as to the value of the property. They examined 16 witnesses, most of whom were experts on the value of real estate. The valuation placed on the land by the witnesses varied from $150,000 to $540,000. The figure finally adopted was that of Folsom. He arrived at his result in the following manner: He computed what in his opinion would be the total annual gross income from the improved property, which he found to be $53,700. From this he deducted estimated amounts for taxes, insurance, and other items of expense, including allowances to the lessee for amortization of the building, management, and interest on the money invested in the building, and arrived at a net income of $8,685.22 per annum, and this he divided by 4 and multiplied by 100, whereby he arrived at the $217,130 which he assigned as the value of the vacant ground. Both the other arbitrators at first did not agree; Heitman claiming that the value was too low, and Nichols that it was too high. Nichols, however, after conferring with the secretary of the appellee, announced his willingness to acquiesce in Folsom's estimate. Heitman refused to assent.

James A. Kerr, Evans S. McCord, and Stephen V. Carey, all of Seattle, Wash., for appellant.

John H. Powell and William A. Peters, both of Seattle, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the award should be set aside for the reason that the appraisers, in adopting the computation which Folsom made as the basis for the finding, made no attempt to ascertain the exact thing submitted to them for determination, but determined only how much, in view of the earning capacity of the building which was on the land, the lessee could afford to pay for the use of the land, or, in brief, that the appraisers did not decide the question which they were called upon to decide, but another. The evidence is that the appraisers held

numerous meetings and received testimony as to the value of the land without improvements. Folsom testified:

"I listened to all that testimony, and for my own satisfaction I undertook to figure out what, in my own mind, the property would show a net return on, if adequately improved and adequately managed. * * * I also took into consideration the testimony of all the witnesses. The result which I reached absolutely represents my judgment as to the true value of the land without improvements."

He further testified:

"The property was adequately improved, and would show as big a net return as any building that could be put on the property at that time."

Nichols took the position that the appraisers had no right to capitalize the building for the benefit of the ground; that their duty was simply and solely to fix the value of the ground, and the only thing they could do would be to raze the building from the ground, and take the present city ordinances into consideration, and build a hypothetical building under the present law, just as if that building did not exist. He objected to using the building as a basis for computation, for the reason that the building under the then existing ordinances of the city could not be built on that land, and that capitalizing it was not fair under the circumstances, but, he testified:

"I finally acceded to it in order to arrive at an appraisement."

He further testified that Folsom—

"used this building instead of an hypothetical building. I didn't object to the rule he used, but I objected to his using this particular building as the basis of his rule, but I afterwards assented."

Again Folsom testified:

"What I was undertaking to do in making this computation was to arrive at the value of the ground. * * * I was trying to arrive at what sum of money that ground was worth, if adequately improved, adequately rented, and properly managed."

[1] It is further objected that in arriving at the net income Folsom deducted taxes, insurance, repairs, expenses of management, amortization, etc., thereby in effect charging them to the lessor, whereas, by the terms of the lease, they were to be paid by the lessee. But it does not appear that these deductions were charged either to the lessor or the lessee. They were made for the purpose of ascertaining what net income the land would yield. Folsom testified:

"If the land and building were owned by the same person, I would use precisely the same method and make the same charges for amortization, taxes, insurance, and interest upon the value of the building. The fact that the building is owned separately from the land does not enter into the problem at all."

We are not convinced that the computation made by Mr. Folsom was improper to be used to aid in determining the value of the land. It was not the sole basis of the valuation arrived at. It was used in connection with the testimony of witnesses who gave their estimates of the value of the land.

264 F.—20

[2] It is important to bear in mind the distinction between arbitration and appraisement. The lease provided for a board of appraisers, and this was a case of appraisement for the purpose of carrying out a contract. The purpose was not to settle an existing controversy, but to avoid future dispute by fixing a valuation. Appraisers are not governed by the rules relating to arbitrators. "As long as appraisers act honestly and in good faith, they have a wide discretion as to their methods of procedure and sources of information. Generally speaking, they may inform themselves in any way that an honest seeker for the truth would adopt." Omaha Water Co. v. City of Omaha, 162 Fed. 225, 233, 89 C. C. A. 205, 213 (15 Ann. Cas. 498), affirmed in Omaha v. Omaha Water Co., 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084, where it was held that the fact that the appraisers, who were three engineers, deemed it within their power to have a confidential examination made of the books of the water company to assist them in arriving at a valuation of the company's system of waterworks, was not a ground for setting aside the award. Folsom, who resorted to the method of computation which is here challenged by the appellants, obviously acted in good faith, and as an honest seeker for the truth, and no suggestion is made of fraud or bias on his part.

[3] An award of appraisers is subject to impeachment for fraud, or misconduct amounting to fraud, or mistake which is not merely a wrong conclusion upon the matters submitted, but it is not to be vacated for mere errors of judgment upon questions of fact or law submitted. 5 C. J. 179; Goddard v. King, 40 Minn. 164, 41 N. W. 659; James v. Schroeder, 61 Mich. 28, 27 N. W. 850; Duvall v. Sulzner (C. C.) 155 Fed. 910; Palmer v. Clark, 106 Mass. 391; Shawhan v. Baker, 167 Mo. App. 25, 150 S. W. 1096; Donaldson v. Buhlman, 134 Wis. 117, 113 N. W. 638, 114 N. W. 431. In Burchell v. Marsh, 17 How. 344, 15 L. Ed. 96, the court held that, if the award is within the submission and contains the honest decision of the arbitrators, after full and fair hearing of the parties, a court of equity will not set it aside for error of law or fact, and the court quoted the language of Lord Thurlow in Knox v. Symmonds, 1 Vesey, 369, who said that in order to induce the court to interfere—

"there must be something more than an error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by evidence."

The court went on to say:

"Courts should be careful to avoid a wrong use of the word 'mistake,' and, by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over awards. The same result would follow if the court should treat the arbitrators as guilty of corrupt partiality merely because their award is not such an one as the chancellor would have given."

[4] A more serious question is raised by the contention that the appraiser Nichols acted as the personal representative of the appellee, and not as a fair, disinterested, and impartial appraiser, and that on joining in the award he acted under the appellee's direction. Reference is made to the fact that, before Folsom was selected as the third appraiser, Nichols consulted with Morris, the appellee's secretary, and

that, when Folsom had announced his conclusion, Nichols again consulted Morris, before assenting thereto. We are not convinced that these matters are sufficient to avoid the appraisement. It was not improper that, before selecting the third appraiser, Nichols should inquire of the appellee whether it made objection to his acting in that capacity (Silver v. Connecticut River Lumber Co. [C. C.] 40 Fed. 192), and there is nothing necessarily fraudulent in the fact that before agreeing to the appraisal Nichols made known to Morris the conclusion which Folsom had reached. The evidence does not indicate that in agreeing with Folsom Nichols acted under the direction of the appellee. Rather it indicates that, while Nichols thought the appraisement should not exceed $150,000, he was disposed to agree to Folsom's figures, and that he so advised Morris, who thereupon told him to use his own judgment. The fact that Nichols stated to the other appraisers that he wished to consult his "principal" before further action does not of itself discredit him as an appraiser.

The court below took the evidence to mean that Nichols, who contended to the last for the right to call other witnesses in rebuttal, did not purpose to ask Morris how he should vote on the figure announced by Folsom, but sought to ascertain whether the appellee had some testimony to present before a final vote was taken, and was of the opinion that the conduct of Nichols, while not highly punctilious, was open, unconcealed, and not unfair or prejudicial to the appellant. To this we agree. Heitman, according to the record, was the agent of the appellant, and at one time he had represented the appellant in an effort to arrive at an agreement with the appellee as to the valuation of the land. Nichols, on the other hand, had no interest in the appellee corporation, or in the result of the appraisal. It has been held that one who appoints his agent an appraiser will not be heard to complain that the other appraiser was an agent of the opposing party. Wheeling Gas Co. v. City of Wheeling, 5 W. Va. 448, 496. In Fox v. Hazelton, 10 Pick. (Mass.) 275, Chief Justice Shaw said:

"And it is not unfrequent in practice for each party to select a friend known to have formed and expressed opinions upon the subject, and preferences for the parties respectively, trusting that these opposite prejudices will balance each other, especially with the aid of an impartial umpire. Without commending the expediency of such references, the court can entertain no doubt of the validity of an award made by such referees, nor could the parties be heard to impeach it on this ground."

Where no corrupt motive appears, the fact that one arbitrator talked with one of the parties regarding the case does not require that the award be vacated. 5 C. J. 188; Flatter v. McDermitt, 25 Ind. 326; Morville v. American Tract Ass'n, 123 Mass. 129, 139, 25 Am. Rep. 40; City of Bridgeport v. Eisenman, 47 Conn. 34; Adams v. Bushey, 60 N. H. 290; Wood v. Auburn & R. R. Co., 8 N. Y. 160.

The decree is affirmed.